[No. 16893. Department One. May 5, 1922.]

MARGARET HAMBLET, *Respondent,* v. MUTUAL UNION
INSURANCE COMPANY, *Appellant.*[1]

INSURANCE (127)—ACCIDENT INSURANCE—LIMITATION OF LIABIL-
ITY—ENGAGING IN UNLAWFUL ACT—EVIDENCE—SUFFICIENCY. In an
action on an accident policy excluding liability in case of death
while engaged in an unlawful act, insured, killed while running
away from an officer in disregard of a command to halt, was not
violating Rem. Comp. Stat., §§ 2366, 2672, making it a misdemeanor
to wilfully resist a police officer, where it appears that accused
was deaf and very timid, and either did not hear the command or
did not know that it came from a police officer.

APPEAL (438)—HARMLESS ERROR—PLEADING—DEMURRER. Error
in sustaining a demurrer to an answer is harmless, where the court
allowed the defense to be gone into.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered June 25, 1921, upon
findings in favor of the plaintiff, in an action on an ac-
cident insurance policy, tried to the court. Affirmed.

*Remann & Gordon,* for appellant.

*W. W. Keyes, J. H. Blakiston,* and *J. H. Gordon,* for
respondent.

FULLERTON, J.—On September 20, 1920, the appel-
lant, Mutual Union Insurance Company, issued its pol-
icy of insurance to one Sam Hamblet, insuring him
"against loss resulting from bodily injuries, effected
directly and independently of all other causes, through
external, violent and accidental means . . . . .
as specified in the following schedule, subject to the
provisions and limitations hereinafter contained." The
schedule following provided that for loss of life the
principal sum of the policy would be paid, and else-
where provided for its payment to the wife of the as-

[1]Reported in 206 Pac. 836.

sured. Among the limitations contained in the policy was one providing that the "insurance . . . . . shall not cover an injury, fatal or non-fatal, caused directly or indirectly by participating in any fight or other altercation or while engaging in any unlawful act."

During the life of the policy the assured died in the city of Tacoma from the effects of a revolver-shot wound inflicted upon him by a police officer of that city. This is an action brought upon the policy by the wife of the assured. The action was tried by the court sitting without a jury, and from a judgment entered therein in favor of the wife, the insurance company appeals.

There is no serious dispute as to the facts. The assured had been for many years prior to his death a resident of the city of Tacoma. He was, however, unknown to the police officer mentioned. Sometime after seven o'clock in the evening of the day on which he was killed, he left his house in the residence section of the city to walk down to the business section. The police officer testified, in substance, that, while he (the officer) was walking his usual beat, at about eight o'clock in the evening, dressed in his police uniform, he saw the assured turn a corner and start in his direction; that immediately thereafter the assured started to run towards an alley leading to an adjacent street; that a "hold up" had been reported as occurring in that vicinity a short time before, and, thinking the assured's action suspicious, he called to him to halt; that the accused did not stop but continued to run, entering the alley; that he then ran to the alley-way and saw the assured still running, being then some one hundred feet ahead of him; that he fired his revolver into the air, again crying halt; that the accused continued running,

when he fired a second shot into the ground; that, after this shot, the assured stopped, when the officer approached him and questioned him as to the cause of his running; that he received no answer and started to search the assured, when he discovered that he was wounded; that he took him to a place where a seat was found, had an ambulance called, and had him sent to a hospital.

The police officer was called at the instance of the respondent. A woman, who witnessed the occurrence, called by the appellant, testifies that the assured was crossing the street towards the alley when she first observed him, and that at first he was walking very fast, starting to run as he approached the alley. In other respects her testimony does not differ materially from that of the police officer.

The respondent testified, and it was testified by a neighbor who knew him intimately, that the assured was partially deaf, so much so that he could not understand when spoken to in an ordinary conversational tone. The respondent also testified that he was excessively nervous, meaning undoubtedly that he was unusually timid; that he had an inordinate fear of being robbed while on the street; that he made frequent reference to his fears in conversation; that he was always worried when he was obliged to carry money on his person, and at times sent his pay checks by his sons to be cashed so as to avoid carrying the money himself.

The sole question presented by the appeal is whether the assured, at the time he received the injury which resulted in his death, was engaging in an unlawful act. It is the appellant's contention that he was. Attention is called to §§ 2366, 2672 of Remington's Compiled Statutes, which make it a misdemeanor wilfully to resist, delay or obstruct a public officer in discharge of

his official powers or duties; and it is argued that it was the duty of the assured to stop at the command of the police officer, and hence his failure so to do was a violation of the sections of the statutes cited, and the engaging in an unlawful act within the meaning of the insurance policy.

It is difficult, it must be admitted, to reconcile the conduct of the assured when it is measured by that of the ordinary man of his age and experience. The ordinary law-abiding and peacefully inclined citizen regards a police officer as his friend rather than his foe, and he will obey the officer's commands unhesitatingly, even though he may feel that the particular command is officious and without justification. There is nothing in the record to show that the accused did not belong to this class. No part of the evidence was directed to the particular question, but such as did get into the record is strongly in his favor. It is shown that he maintained a home, that he was rearing a family, and that he pursued the business through which he supported himself and his family steadily and uninterruptedly. The most natural explanation of his conduct is, we think, that the emptiness of the street on which he entered at the time the officer first saw him excited his unusually timid disposition; that he did not see the officer; or, if he saw him, did not recognize that he was an officer; that he started running in order to more quickly reach a street on which he felt there was greater safety; that the officer's command to halt was not heard by him, or if heard was not recognized as the command of an officer, and that, when he heard the first of the revolver shots, he thought that the dreaded circumstance was upon him and that his only safety lay in continued flight. Taking this view of his conduct, the assured was not guilty of any violation of the law. The

statute, it will be observed, is directed against wilful action. To do a thing wilfully imports that it is done with knowledge. Hence no one can be said to have wilfully resisted the command of an officer unless he knew it was an officer who gave the command. We think, therefore, the trial court justly concluded that the assured was not engaging in an unlawful act within the meaning of that phrase as used in the policy when he received the wound which resulted in his death.

The trial court sustained a demurrer to the appellant's answer, which set forth the assured's conduct from the appellant's point of view; that is, that there was a wilful disobedience to the officer's command to halt. In this we think the trial court erred. But since at the trial he permitted without hindrance the entire circumstance to be gone into, the error was without prejudice.

The judgment is affirmed.

PARKER, C. J., TOLMAN, BRIDGES, and MITCHELL, JJ., concur.