# BEN-HUR LIFE ASSOCIATION *v.* COX.

[No. 14,396.    Filed June 24, 1932.    Rehearing denied October 27, 1932.]

*Bracken, Gray & De Fur* and *Frank G. Davidson,* for appellant.

*White & Haymond,* for appellee.

LOCKYEAR, J.—The original complaint in this case was filed in two paragraphs by Alma L. Cox, based upon a certificate of beneficial membership issued to Angus L. Cox, the son of the appellee, whereby the appellant society agreed to pay to the beneficiary, upon the death of the said Angus L. Cox, the sum of $1,000 in accordance with the agreement embodied in the certificate of membership, the application therefor, the articles of incorporation, and the by-laws of the society.

The second paragraph asks for the payment of an additional $1,000, because of the alleged death through accidental means of the said member, based upon a double indemnity provision in the certificate where death occurred in such manner.

The certificate in question is made an exhibit and a part of the complaint.

The appellant filed answer in two paragraphs, the first of which was subsequently amended, and the second of which was in general denial. The appellee replied in general denial to the first paragraph of answer.

The issues thus formed were upon the proposition of the death of the member, while in good standing, by accidental means, and the defense made by the society because the death in question was within certain exceptions contained in Sec. 110 of the by-laws of the society, appearing at record page 46, as follows:

"No benefit shall be paid on account of the death or

disability of any member which death or disability occurred within two years from the date of his certificate . . . while resisting arrest . . . or on account of, or in consequence of, or as a result of the violation by any such member of an ordinance of any city, or town, or of any law, either civil or criminal, of any state, territory, province, or country in which such member may be, which violation of ordinance or law is the proximate cause of such death or disability, or if the death or disability follows such violation of any ordinance or law and would not have occurred except for the violation of such ordinance or law."

The appellant in this case maintains that the death of the member occurred while he was resisting arrest and was proximately caused by violation of law, or followed such violations of law, and would not have occurred except for such violation. That there can be, therefore, no recovery of any amount under the certificate, since the double indemnity feature applies only where something is payable on account of the regular benefit promised and, in any event, the death did not result from accidental means, inasmuch as the deceased was killed by officers of the law with a warrant for his arrest, while he was in actual violation of law; the said officers intending to arrest him and stop the decedent and his companions by such means as might be necessary.

Trial was had before the court, and after hearing the evidence, on the 16th day of February, 1931, the same being the 37th judicial day of the January term, 1931, of the Delaware Circuit Court, the court filed its special finding of facts, as requested by the parties before the hearing of evidence in this cause.

The court entered its conclusions of law on the finding of facts, to which conclusions of law the appellant sep-

arately and severally as to each conclusion of law excepted.

The court rendered judgment on the special finding of facts and conclusions of law in this cause against the appellant in the sum of $2,145.

The court found the facts specially, and the facts found by the court necessary for the decision of this case were in substance as follows:

That the decedent, Angus L. Cox, died on the 24th day of November, 1929, as a result of revolver gunshot wounds inflicted by peace officers on the night of his death, and at the time of his death, said Angus L. Cox was a member in good standing of the appellant society, and was the owner of the certificate of beneficial membership sued on in appellee's complaint.

That prior to the death of said Angus L. Cox, all assessments required by the terms of said certificate and the laws of said society had been fully paid, and at the time of the death of said Angus L. Cox, said certificate was in full force and effect.

That the appellee, Alma A. Cox, is the mother of said decedent, and is the beneficiary named in said certificate of beneficial interest.

That during the months of October and November, 1929, the said Angus L. Cox, individually and in conjunction with other persons, committed a series of criminal acts, consisting of robberies, burglaries, auto banditry, and other like offenses against the laws of the State of Indiana, and in violation thereof, many of which criminal offenses committed by the said Angus L. Cox were perpetrated by the said Angus L. Cox and his companions by the use of revolvers and by placing the persons against whom they committed such criminal offenses in fear of threats and intimidation; that said offenses were committed in more than one dozen cities

in the State of Indiana and in the State of Illinois; that on the night of November·24, 1929, said Angus L. Cox and his companions committed a robbery in the City of Terre Haute, Indiana, and drove from said City of Terre Haute to the place of the shooting hereinafter referred to, in an automobile which the said Angus L. Cox and his companion had stolen; that all of said crimes and offenses committed by the said Angus L. Cox individually and in conjunction with his companions were in direct violation of the criminal laws of the State of Indiana.

That on the 24th day of November, 1929, the police officers of the City of Muncie, Indiana, had warrants in their possession commanding them to arrest the said Angus L. Cox and his companions; that it was then known to the police officers and peace authorities of the City of Muncie, Indiana, that said Angus L. Cox and his companions had, prior to the 24th day of November, 1929, been guilty of a number of crimes and offenses hereinbefore referred to, and particularly that the said Angus L. Cox and his said companions were guilty of the crime of automobile banditry, which had been committed by them in the City of Muncie, Indiana.

That on the night of November 24, 1929, about the hour of 10 o'clock P. M., the deceased, Angus L. Cox, and two companions, Albert Nickerson and Irvin Jones, all three of whom had been engaged in the violation of the criminal law of the State of Indiana as hereinbefore found, drove a President 8 Studebaker sedan automobile over a public highway extending east and west in Wells County, Indiana, to a frame building located immediately adjacent to and on the north side of said highway with the intent and for the purpose of visiting a sister of said Albert Nickerson, who lived on the second floor of said building; that the said building faced the south on the north side of said highway, and on the east side

thereof there was an outside stairway beginning about forty feet north of said highway and extending about twenty feet north and up to a point about twenty feet above the ground, at which point there was a small platform immediately east of and in front of a doorway to said second floor of said building; that at said time certain peace officers were located within the apartment in said building adjacent to said doorway on the second floor of said building, which said peace officers had in their possession at said time a warrant for the arrest of the said Angus L. Cox and his companions for the offense of automobile banditry; that prior to said time said officers had received information that said Angus L. Cox and his said companions were to come on said evening to the room in which said officers were then located; that said automobile in which said Angus L. Cox and his said companions were traveling at said time stopped on the edge of said highway directly in line with said stairway and one of said companions, to-wit, Albert Nickerson, alighted from said automobile, walked up said stairway, and, seeing no light in said rooms of his said sister, turned a flashlight into said room through the glass in said doorway at the top of said stairway; that he saw a strange face in said room, and turned and ran down the stairway and jumped upon the running board of said automobile; that said peace officers saw said Nickerson flash said light and turn to run and they immediately ran out of said room on the said platform, and, while standing upon said platform at the top of said stairway approximately 60 feet from said automobile, commenced firing revolver bullets toward and in the direction of said automobile at the time said Albert Nickerson jumped upon said running board; that said officers fired eighteen shots toward and in the direction of said automobile with the purpose and intent of stopping said automobile and arresting the occupants there-

of; that at the time of said shooting said Angus L. Cox was seated in the rear seat of said automobile and he did not at any time leave said rear seat of said automobile; that at the time said Nickerson alighted from said automobile and started toward the stairway above described, the other companion of the said Angus L. Cox, to-wit, Irvin Jones, took his place behind the steering wheel of said automobile, and during all the time the said Nickerson was engaged in ascending and descending the stairway above described, the engine or motor of said automobile was running and said car was not in gear; that there was no artificial or other light in the vicinity of said officers or of said occupants of said automobile, and said peace officers could not and did not recognize the said Angus L. Cox seated in the rear seat of said automobile, and had no personal knowledge of the fact that said Angus L. Cox was within said automobile; that said Angus L. Cox had no knowledge that said officers were in said room, and had no notice or knowledge that said officers intended to shoot towards said automobile at the time of said shooting; that it was dark and said Angus L. Cox could not see said officers to know who they were at the time of said shooting; that one of the bullets fired from the revolvers of the said peace officers struck the said Angus L. Cox in the forehead, entering his brain, and from said bullet wound the said Angus L. Cox died; that said Angus L. Cox received said mortal wound while he was so seated in the rear seat of said automobile; that said Angus L. Cox did not offer any resistance whatever to said peace officers at the time of said shooting; that the police officers, immediately before and while firing their revolvers in the direction of said automobile, called in a loud voice, "Stop" and "Halt in the name of the law," but that neither the said Nickerson nor the occupants of said automobile at said time heard said commands of said

peace officers; that the automobile in which the deceased had journeyed to the place where said shooting took place was a stolen automobile, and that the said decedent, while riding in said automobile, well knew that the same had been stolen; that the death of said Angus L. Cox did not result by reasons of said decedent being engaged at the time in, or taking part in, a mob, riot, or insurrection, nor while he was resisting arrest, nor on account of or in consequence of the intemperate use of intoxicating liquors, or drugs or cigarettes, nor on account of the decree or judgment of any court; that during the time the said Cox and his companions were engaged in committing the series of crimes herebefore mentioned, the said Cox had stated to his companions that if the officers at any time showed up, they were not going to take him; that the law was not going to take him; and that as the automobile in which said decedent was riding approached the point where the shooting took place, the said Angus L. Cox had in his possession in said automobile a rifle on the rear seat of said automobile by his side; that at the time of the fatal wounding of the said Angus L. Cox, he was not then engaged in any violation of law, except as herein stated.

That the said Angus L. Cox died on the night of November 24, 1929, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent, and accidental means, inflicted on said night as hereinbefore found; that said death was not the result of self destruction or caused by or contributed to directly or indirectly, wholly or partially, by disease or by bodily or mental infirmities and that said death did not result from bodily injuries sustained while participating in aviation.

That the appellant herein has never paid to the appellee any part or portion of the sum of one thousand dollars, being the amount of the indemnity provided for

death of the said Angus L. Cox, as provided in said policy of insurance, nor has said appellant ever paid to said appellee any part or portion of the sum of $1,000 provided for in said policy of insurance as additional or double indemnity in case of the accidental death of the said Angus L. Cox, and that there is now due and owing by the appellant to the appellee the sum of $2,000 on account of said policy of insurance, together with interest thereon at the rate of 6% per annum from the 24th day of January, 1930.

The court now states its conclusions of law upon the facts found as follows:

1. That the law is with the appellee in this case.

2. That there is due and owing the appellee from the appellant, on the contract of insurance sued upon in appellee's complaint, the sum of $2,000, with interest thereon at the rate of 6% per annum from the 24th day of January, 1930.

The appellant filed a motion for a new trial on the grounds that the decision of the court is contrary to law and is not sustained by sufficient evidence.

The appellant assigns as error that the court erred in each of its conclusions of law No. 1 and No. 2, and that the court erred in overruling appellant's motion for a new trial.

A leading case in Indiana is that of *Bloom* v. *Franklin Life Ins. Co.* (1884), 97 Ind. 478, 49 Am. Rep. 469, in which the court, after a careful consideration of the questions involved in the case, laid down the rule that a violation of a positive law, whether civil or criminal, would avoid the policy, if the natural and reasonable consequences of the violation were to increase the risk.

There must be some overt act to constitute a violation of law. Mere intent to violate is not sufficient. *Cornwell* v. *Fraternal Accident Assn.*

(1896), 6 N. D. 201, 69 N. W. 191, 40 L. R. A. 437, 66 Am. St. Rep. 601.

There must, in all cases, be some causative connection between the act which constituted the violation of law and the death of the insured. *Bloom* v. *Franklin Life Ins. Co., supra; Scott* v. *Empire State Degree of Honor* (1923), 204 App. Div. 530, 198 N. Y. S. 535; *Standard Life & Accident Ins. Co.* v. *Fraser* (1896), '76 Fed. 705; *Wilkinson* v. *Travelers' Ins. Co.* (1903) (Tex.), 72 S. W. 1016; *Conboy* v. *The Ry. Officials' and E. Accident Association* (1897), 17 Ind. App. 62, 46 N. E. 363, 60 Am. St. Rep. 154; *National Benefit Assn.* v. *Bowman* (1887), 110 Ind. 355, 11 N. E. 316.

Not only must there be a causative connection between the violation of law and the death, but such connection must be direct and not indirect; proximate or immediate, and not remote. It has been held:
"The law does not consider the cause of causes beyond seeking the efficient predominant cause. So the fact that the death of the insured is the consequence of some illegal act of his, is not sufficient if it did not occur while engaged in such illegal act as the direct result thereof. Thus, though one has committed an assault on or engaged in a combat with another, the violation of the law involved therein does not relieve the insurer, if the insured has ceased from his assault or retreated from the combat, and is killed by the other person from motives of revenge, though the acts immediately follow each other." *Cluff* v. *Mutual Ben. Life Ins. Co.* (1868), 13 Allen 308, 99 Mass. 317; *Supreme Lodge K. of P.* v. *Bradley* (1904), 73 Ark. 274, 83 S. W. 1055, 67 L. R. A. 770, 108 Am. St. Rep. 38, 3 Ann. Cas. 872; Cooley's Briefs on Ins., Vol. 6, page 5217.

An interesting phase of this question is presented by those cases in which death occurred while insured was

escaping from or attempting to evade arrest after the commission of a crime. In *American Mutual Ben. Assn.* v. *Joshua* (1918) (Tex. Civ. App.), 200 S. W. 260, it is said that the exception does not release the insurer from liability, where insured was shot while resisting arrest or attempting to escape from an officer. In *Griffin* v. *Western Mutual Ben. Assn.* (1886), 20 Neb. 620, 31 N. W. 122, 57 Am. Rep. 848, the insured entered the office of the State Treasurer and by show of arms obtained a sum of money, and was shot and killed while making his escape, but before he had reached the outer door of the capitol. It was held that as he had obtained the money and was making his escape while shot, he was not at the instant of death violating any law within the terms of the exception. Where insured committed burglary and while attempting to escape from the householder, who had seized him, was killed by the accidental discharge of his own gun, the burglary was not the cause of death. *Jordan* v. *Logia Suprema De La Alianza Hispano-Americana* (1922), 23 Ariz. 584, 206 Pac. 162, 24 A. L. R. 974. In *Hamblet* v. *Mutual Union Ins. Co.* (1922), 120 Wash. 31, 206 Pac. 836, it was held that proof that insured was killed by a policeman whose order to halt he did not obey, with proof that he was hard of hearing and was in great fear of holdups, does not show that he was engaged in an unlawful act when he was killed, though Rem. Code 1915, Paragraphs 2366, 2672, make it a misdemeanor to resist, delay, or obstruct a public officer in the discharge of his public duties. So where insured was shot by a sheriff, who was attempting to arrest him as a deserter, his death was not within the exception, especially as it appeared that the only reason for the shooting was that the insured did not put up his hands when commanded to do so. *Utter* v. *Travelers' Ins. Co.* (1887), 65 Mich.

545, 32 N. W. 812, 8 Am. St. Rep. 913. Cooley's Briefs on Insurance, page 5219.

The appellant concedes that the law as stated above is correct as applied to the facts of the cases cited, but the contract of insurance in this case contains an additional proviso not usually found in other insurance contracts, viz., "or if the death or disability follows such violation of any ordinance or law and would not have occurred except for the violation of such ordinance or law." This clause does not in our judgment add to or detract from the rights and liabilities of the parties, and is nothing more that an affirmance of the rule that, in order to avoid the policy, the violation of law must have been the direct and not the remote cause of the death of the insured.

In the instant case, the deceased was far from the scenes of his various crimes. That he was a criminal there is no doubt, but that does not avoid the policy. A policy could be drawn exempting the insurer from liability under the facts of this case, but under the facts and the law applicable thereto, we find no reversible error in the record.

The finding of facts are supported by the evidence.

Judgment affirmed.