## HAYES *v.* CITY OF DALTON *et al.*

No. 17909. ARGUED JUNE 9, 1952—DECIDED JULY 14, 1952—
REHEARING DENIED JULY 28, 1952.

*Isaac C. Adams* and *Ernest McDonald*, for plaintiff in error.
*Pittman, Hodge & Kinney* and *H. E. Kinney*, contra.

HEAD, Justice. The only substantial issue in this case is whether or not the five men objected to by the plaintiff as policemen were members of the police force of the City of Dalton on March 3, 1952.

The petition alleges, and the answer admits, that there were two elections in the City of Dalton, the first on May 2, 1951, in which a majority of the voters participating voted that the City of Dalton should come under the provisions of the "Municipal Home Rule Law" (Ga. L. 1951, pp. 116-127, Code, Ann. Supp., Chapter 69-10). The second election was held on December 12, 1951, in which a charter amendment was approved by a majority of the qualified voters. The act amended was the Dalton charter amendment approved February 12, 1945 (Ga. L. 1945, p. 593). The voters participating in the charter-amendment election of December 12, 1951, had printed on their ballots, "For approval of amendment to abolish civil service commission," and "Against approval of amendment to abolish civil service commission."

The charter amendment approved by the voters repealed sections 2, 3, 4, 5, 6, 7, 8, 9, 12, 13, 20, 21, and 25 of the act of 1945, and enacted new sections having corresponding numbers. The amendment also repealed sections 14, 17, 22, and 28, without enacting corresponding sections. Section 3 of the amendment to the charter provided for the election of a chief of police on the second Wednesday in February, 1952, for a term beginning the first Monday in March (March 3), 1952, to January 1, 1954. It is necessary to consider only sections 2 and 5 of the charter amendment, to determine whether or not the five men objected to by the plaintiff were members of the police force at the time the new chief of police qualified on the first Monday in March, 1952.

Section 2 of the charter amendment provides: "Be it enacted by the Mayor and Council of the City of Dalton, Georgia, and it is hereby enacted by the authority of the same, that there is hereby created for the City of Dalton a police and fire department, to consist of a chief of police and such other officers, and a fire chief, and such other firemen as may be determined by mayor and council and such mayor and council shall be charged with the administration of the affairs of said departments."

Section 5 of the amendment to the charter provides as follows: "Be it further enacted that on the first Monday of March, 1952, every member of the police force and every member of the fire department of the City of Dalton, Georgia, shall have equal

rank, with the exception of newly elected Chief of Police. At said meeting, the Mayor and Council shall designate from the membership of the Fire Department a fire chief and said fire chief shall, subject to confirmation of the Mayor and Council, designate an assistant fire chief. At said meeting the Chief of Police shall designate, subject to confirmation of the Mayor and Council, three police lieutenants from the police department. It is further provided that all future appointments to the police or fire departments shall be made by the chief of the respective departments, subject to confirmation of the Mayor and Council; provided further that no person shall be appointed to either the police or fire department, who is not a bona fide resident of the City of Dalton."

The trial court in construing the charter amendment, and particularly the provisions of section 5, held that "all policemen who were on duty and on the payroll as policemen on March 3, 1952, would continue as such policemen until removed as provided by law." The trial court properly construed the provisions of section 5 of the amendment. The plaintiff contends, however, that under the provisions of section 2, the police force of the City of Dalton was abolished, and that the new chief, therefore, had the right to name an entirely new police force. This contention is not only untenable under any practical consideration of the question as to whether or not the City of Dalton had a police force on March 3, 1952, when the plaintiff took his office as chief, but it is without any support under the language of section 2 of the amendment. Section 2 of the former act placed the management of the police force of the City of Dalton under a civil service commission. Section 2 of the new act, in effect, transferred the management of the police force from the civil service commission to the mayor and council. At the very moment the civil service commission was abolished, a police force under the mayor and council of the City of Dalton was created. There was no hiatus as to time between the old and the new police force.

The charter amendment provides that it shall become effective when the results of the election are declared by the mayor and council, and entered upon the minutes. Until the results were declared, the police force continued under the civil service com-

mission, and upon a declaration of the results in the manner required, a police force under the mayor and council existed. Whether or not the election providing for the charter amendment was ever declared by the mayor and council and ever entered upon the minutes, the plaintiff has not, and can not, insist that the results were not declared. His office of chief of police, and the election at which he was elected, rest on the proposition that the results of the charter-amendment election were declared by the mayor and council, and properly entered upon the minutes.

When the civil service commission was abolished, the mayor and council were immediately charged with the management and control of the police force. Unquestionably, under this record, there was a police force operating in the City of Dalton, of which these five men were members, on the date the plaintiff took office as chief. The plaintiff recognized this fact by nominating from this force three men as lieutenants. There is no merit in the contention of the plaintiff that the police force of the City of Dalton ceased to exist under the charter amendment, and that the city was without a police force continuously from the date of the amendment up to and including the date the plaintiff qualified as chief of police. The authorities cited and relied upon by the plaintiff are not in point on their facts.

It was not error to refuse to sustain the plaintiff's special demurrers to the answer of the defendants.

While we have ruled on the merits of the issue, and hold that the five men objected to by the plaintiff were members of the police force of the City of Dalton on March 3, 1952, and that the plaintiff had no right to refuse to assign duties to them, such ruling is not to be construed as a holding that the plaintiff's petition would have stated a cause of action for any equitable relief, even if his contentions as to the legal effect of the charter amendment could otherwise have been sustained.

A policeman is a public officer. *Davis* v. *Matthews,* 169 *Ga.* 321 (150 S. E. 158); *Echols* v. *Reed,* 186 *Ga.* 105 (197 S. E. 244). "The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein." Code, § 64-201. "Quo warranto affords an adequate remedy for the trial of title

to a public office, and where title is the sole issue, all equitable jurisdiction is ousted." *Stanford* v. *Lynch*, 147 *Ga.* 518 (94 S. E. 1001); *Moore* v. *Dugas*, 166 *Ga.* 493 (5) (143 S. E. 591); *Hornady* v. *Goodman*, 167 *Ga.* 555 (3) (146 S. E. 173).

The allegations of the petition that the five men contributed to the plaintiff losing his previous employment as Chief of Police of the City of Dalton, and were unco-operative with him during his former term of office, and allegations as to the dangers involved in an unauthorized armed police force amount to no more than "window dressing," and add nothing substantial to the issue between the parties.

The allegations of the petition were insufficient to state a cause of action for equitable relief by injunction, since equity has no jurisdiction where a full, adequate, and complete remedy exists at law. In this case quo warranto would have been an adequate remedy. The cross-action of the defendants and the judgment of the trial court have invoked the rulings here made upon the merits of the cause.

*Judgment affirmed. All the Justices concur, except Atkinson, P.J., not participating, and Candler, J., disqualified.*