[No. 977-1.    Division One—Panel 1.    December 20, 1971.]

THE CITY OF MOUNTLAKE TERRACE, *Respondent*, v. LUTHER E. STONE, *Appellant.*

*Houger, Garvey & Schubert, M. John Bundy,* and *Michael Rosen,* for appellant.

*Adair, Kasperson, Hennessey & Bowden* and *William F. Hennessey,* for respondent.

HOROWITZ, C.J.—Defendant was convicted by the Mountlake Terrace Municipal Court of violating a city ordinance. He was fined $50, suspended. He appealed to the superior court below and the conviction was affirmed.

City of Mountlake Terrace Ordinance No. 405, italicized to the extent here involved, provides:

*Every person who, after due notice, shall refuse or neglect to make or furnish a statement, report or information lawfully required of him by any public officer,* or who, in such statement, report or information shall make any willfully untrue, misleading or exaggerated statement, or who shall willfully hinder, delay or obstruct any public officer in the discharge of his official powers or duties, *shall be guilty of a misdemeanor.*

On the morning of March 20, 1970, at approximately 5:40 a.m., the defendant was walking northbound on 60th West at 227th in the city of Mountlake Terrace, Washington. It was the defendant's custom to jog in the morning, but on this particular morning he was walking, due to the fact that he was suffering from a cold. He had walked approximately 2½ miles prior to his contact with the Mountlake Terrace police, which occurred at approximately 5:40 a.m., a short distance from his home.

The area in which the defendant was walking was a residential district. He was walking along the side of the road near some heavy construction equipment concerning which the Mountlake Terrace police had received complaints of vandalism and burglary.

Officer Dahlquist of the Mountlake Terrace police force, in police uniform, was by himself in a police car when he observed the defendant walking along the road in the area

described at a pace between a walk and a run, breathing heavily and perspiring. The defendant was wearing dark clothing and in his hand was carrying what Officer Dahlquist described to be a "Russian type hat." Officer Dahlquist approached from the defendant's rear in the police car and pulled alongside where the defendant was walking. The men exchanged greetings by saying "good morning," and the defendant continued to walk and Officer Dahlquist continued to drive alongside.

The officer began asking the defendant to identify himself and to explain his presence at that particular time and place. In addition, the officer directed that the defendant should produce identification of himself. The defendant asked whether his responses would be required or voluntary. When the officer replied that the defendant was required to produce identification and to answer questions, the defendant stated that he would decline to do so on the ground that he did not believe the officer had the right to require the defendant to verbally respond or to produce identification.

A debate over these matters between the defendant and the officer continued as defendant walked and the officer drove his car alongside. A short time later, defendant had come to his home, walked across the street in back of the police car, and into his house.

Officer Dahlquist thereupon summoned a second uniformed officer and both of them went to defendant's door and knocked. Defendant answered the door and the three men continued the argument concerning whether the defendant was to answer questions or to produce identification. Defendant demanded that one of the officers identify himself and the latter did so by producing his badge and commission card. Defendant still did not answer, however. He was thereupon arrested, transported to the police station where he did identify himself and his residence, but he was charged with violation of the ordinance above described and convicted.

Defendant contends the ordinance is constitutionally in-

valid under the first, third, fourth, fifth, ninth and fourteenth amendments to the United States Constitution. We hold the portion of the ordinance here involved to be violative of the Fourteenth Amendment and therefore find it unnecessary to consider whether the ordinance is also violative·of the other amendments relied on.

■ The basic question here raised by the Fourteenth Amendment, binding on the state, is whether the ordinance is framed "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . ." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926); *Coates v. Cincinnati,* 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971); *Palmer v. Euclid,* 402 U.S. 544, 29 L. Ed. 2d 98, 91 S. Ct. 1563 (1971); *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967); 50 Am. Jur. *Statutes* §§ 472-75 (1944, Supp. 1971); 22 C.J.S. *Criminal Law* § 24(2) (1961, Supp. 1971). As stated in *Seattle v. Drew, supra* at 408:

> To be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment. *Winters v. New York,* 333 U. S. 507, 92 L. Ed. 840, 68 Sup. Ct. 665 (1948). A law that fails to give fair notice of what acts will be punished is violative of due process. *Ibid.* It is fundamental that no ordinance may unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or to stand still. The right to be let alone is inviolate; interference with that right is to be tolerated only if it is necessary to protect the rights and the welfare of others. *State v. Caez,* 81 N.J. Super. 315, 195 A.2d 496 (1963); *Territory of Hawaii v. Anduha,* 48 F.2d 171 (9th Cir. 1931); *St. Louis v. Gloner,* 210 Mo. 502, 109 S.W. 30 (1908); *Pinkerton v. Verberg,* 78 Mich. 573, 44 N.W. 579 (1889).

> An ordinance that restricts such freedom must contain standards that are reasonable and that do not permit arbitrary enforcement. If an ordinance imposes sanctions authorized by language that is doubtful, vague, or uncertain, it violates fundamental concepts of justice and due process of law. *State v. Caez, supra.*

We have found no statute in this state, other than RCW 9.69.060 copied by the ordinance, nor indeed any statute in any other state, so broad, general and all-inclusive as is this ordinance; nor have we found any decision passing on the basic question here involved in relation to such a statute or ordinance.

The answer to the basic question presented depends upon whether the phrases "after due notice" and "lawfully required of him by any public officer" can be said to give the interrogatee fair warning that the answer asked is one the police officer may require. The question is especially pertinent because of the absence in the part of the ordinance here involved of a requirement of willfulness or bad faith in the failure or neglect to answer. *Cf.,* RCW 9.69.030, .040. *See American Communications Ass'n, CIO v. Douds,* 339 U.S. 382, 412-13, 94 L. Ed. 925, 70 S. Ct. 674 (1950), *rehearing denied,* 339 U.S. 990, 94 L. Ed. 1391, 70 S. Ct. 1017 (1950). The void for vagueness doctrine does not require total clarity and precision. It is enough if the statute or ordinance is reasonably clear to persons of ordinary intelligence. *State v. Missmer,* 72 Wn.2d 1022, 435 P.2d 638 (1967), *cert. denied,* 393 U.S. 885, 21 L. Ed. 2d 162, 89 S. Ct. 197 (1968).

■ We assume, as do the parties, that the term "public officer" contained in the ordinance is broad enough to include a police officer. This construction of the term is one adopted under other statutes in this state. *State v. Austin,* 65 Wn.2d 916, 400 P.2d 603 (1965); *State v. Cooney,* 23 Wn.2d 539, 161 P.2d 442 (1945); *State v. Worsham,* 154 Wash. 575, 283 P. 167 (1929); *Hamblet v. Mutual Union Ins. Co.,* 120 Wash. 31, 206 P. 836 (1922). *See Hayes v. Dalton,* 209 Ga. 286, 71 S.E.2d 618 (1952); *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P.2d 1020, 33 P.2d 905 (1934); *Benefiel v. Eagle Brass Foundry,* 154 Wash. 330, 282 P. 213 (1929).

■ We assume also that the term "due notice" is not unconstitutionally vague. Merriam-Webster Third Int'l Dictionary (1969) defines the word "due" as "requisite or appropriate in accordance with accepted notions of what is

right, reasonable, fitting, or necessary." In the context used "due notice" conveys the meaning of prior notice sufficient to make known the public officer's demand, neither too short nor too long prior to demand, hence reasonable under the circumstances. This meaning may not be mathematically precise, but the concept of reasonableness in varying contexts has been so often applied, as in negligence cases for example, that it may be doubted if, with respect to due notice, "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co., supra. See* Annot., 6 A.L.R.3d 1326, § 11 (1966). If the words involved are sufficient in civil cases, they seem to us no less sufficient in the present ordinance which provides for a criminal rather than a civil sanction.

■ A more difficult question is presented as to the constitutional validity of the phrase "lawfully required of him by any public officer." Preliminarily, it must be determined whether the phrase "lawfully required" means lawfully required only by statute. The similar but distinguishable phrase "required by law" contained in many statutes is ordinarily construed to mean required by statutory law. Unless the context otherwise requires, such construction seems to best carry out legislative intent. *People v. Knapp,* 147 App. Div. 436, 132 N.Y.S. 747, 750 (1911); *Brinckerhoff v. Bostwick,* 99 N.Y. 185, 1 N.E. 663, 665 (1885); *Newport v. Silva,* 143 Ky. 704, 137 S.W. 546, 547 (1911). *See Casey v. Trecker,* 268 Wis. 87, 66 N.W.2d 724, 731 (1954); *In re Sorensen's Estate,* 195 Misc. 742, 91 N.Y.S.2d 220, 224 (1949); *Gilliam v. California Employment Stabilization Comm'n,* 130 Cal. App. 2d 102, 278 P.2d 528, 536 (1955). The phrase "lawfully required" here involved also must be construed to carry out legislative intent in light of the purpose of the ordinance in the case of a police officer to assist him in the discharge of his duties to prevent crime, to detect law violators, and to obtain evidence for use in court to convict persons charged with crime. So construed the phrase "lawfully required" may well mean lawfully required whether by virtue of statute or decision. The pur-

pose of the ordinance would not be fully realized if the phrase meant merely "statutorily required." So construed the uncertainties of this all-embracing phrase, unlimited in subject matter, are considerably multiplied. In contrast are illustrative statutes which, although drafted in general terms, are far more limited in subject matter or far more specific in description of information required, or both. *Cf.,* RCW 18.64.245, 28A.27.040, 48.30.120, 65.12.055.

An interrogatee asked by a police officer, under an overhanging criminal sanction, "to make or furnish a statement, report or information," is immediately faced with the problem of answering the question whether the police officer is "lawfully required" to insist upon the required statement, report or information. At the risk of incurring a criminal sanction if he errs, the interrogatee must determine in his own mind whether the statement, report or information may be lawfully required of him. Questions that may need answer are many. Thus, may the police officer require him to answer unless the officer has reasonable cause to investigate the commission of a crime? *Cf., Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). May the officer require compliance notwithstanding that the interrogatee may have to undergo "unreasonable effort or expense" (*see* RCW 21.20.220)? May the officer require the answer even if not relevant or material to the proper subject matter of an investigation? *Cf.,* RCW 43.09.050(7), 67.16.050. May the information be required unless the interrogatee is first informed of the subject matter of the investigation so that the interrogatee himself may determine the relevancy and materiality of the questions asked and his duty to answer them? *Cf.,* C. Antieau, Modern Constitutional Law § 5:2 (1969, Supp. 1970). May the information be required before the interrogatee is given an opportunity to consult counsel, or before being warned of his constitutional right to remain silent either under the Fifth or possibly the First Amendments, especially on the theory that an overhanging criminal sanction makes the interrogation involuntary in character? *Cf.,* C. Antieau, Modern Constitutional Law § 2:37 (1969, Supp. 1970).

The interrogatee, in determining whether the officer may lawfully require an answer, must ask himself whether the demandable answers include answers which are privileged by statute, decision, or by Const. art. 1, or by the first, third, fourth, fifth, ninth and fourteenth amendments to the United States Constitution. Thus, if the interrogatee either remains silent or refuses to answer the first question, under the ordinance he is guilty of a misdemeanor. The officer knows this and as in the case of any other crime he "cannot be expected to permit the suspect to leave his presence. At that point, interrogation becomes custodial, and the suspect must be warned of his rights." *State v. Creach,* 77 Wn.2d 194, 198, 461 P.2d 329 (1969). Should he conclude that the information is privileged and thereupon assert his right to remain silent, he may be faced with further interrogation by an officer whose suspicions may have been further aroused by the claim of privilege, requiring a further and more searching interrogation. *See generally,* Tiffany, McIntyre & Rotenberg, Detection of Crime, Part 1 (1967). Even if the information required is not privileged by statute or constitution, the interrogatee, who may be unaware of the purpose of the interrogation, may find himself in a position of having to determine difficult questions concerning waiver of his Fifth Amendment rights by answering some questions concerning which he must invoke Fifth Amendment privilege if he is not to waive his rights. *See* C. Antieau, Modern Constitutional Law §§ 2:29, 2:34 (1969, Supp. 1970). Furthermore, the question may well arise whether the officer, without violating the Fifth Amendment, may lawfully require answers otherwise violative of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), but whose purpose is to lay the basis for impeachment on the issue of credibility in the event of trial. *See Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971). In the course of such interrogation, answers may be demanded which, although not privileged under the Fifth Amendment, may yet be resented as an unwarranted invasion of his privacy or right of privacy

because dealing with matters of a confidential character communicated to or by the interrogatee to or by his accountant, banker, business advisor or agent, or information communicated to the interrogatee in confidence by friends, fiancee, or even members of his own family. Inquiry may range to subjects that might embarrass him or expose him to civil liability or even prosecution for offenses committed outside the jurisdiction. It may even involve the reopening of subject matter adjudicated in old convictions or conduct concerning claims barred by the statute of limitations. Faced with an overhanging criminal penalty and not provided with the protections securing the interrogatee against the dissemination of the information obtained to persons other than those entitled to it in aid of law enforcement (see RCW 74.04.060; 46.52.080; 43.19.060, .070), and with no provisions protecting the interrogatee with immunity from the use of such information in subsequent prosecution (see C. Antieau, Modern Constitutional Law § 2:35 (1969, Supp. 1971)), an interrogatee is put in the almost impossible position of refusing to give answers which may or may not be lawfully required for fear that determination of the lawfulness of the question and answer may result in a criminal prosecution.

It is not as if the legislative body did not have alternatives that would set out in more specific terms just what is required of an interrogatee without placing him in the dilemma of guessing at what may be lawfully required. Cf., RCW 46.61.020, 71.12.560. Obviously, even a man of common intelligence is not familiar with nor can he be expected to remember statutes, ordinances or decisions which may or may not define what may be lawfully required. Powers v. Owen, 419 P.2d 277 (Okla. 1966), dealt with the applicability of a statute which inter alia prohibited hunting of migratory birds "except as provided in the laws of Congress relating to the killing of such migratory wild fowl . . . ." Concerning a new statute not rendering the statute unconstitutionally void under the Fourteenth Amendment, the court said:

> While ignorance of the law is no excuse, our fundamental concept of due process does not require a citizen to employ counsel to research the statutes of Oklahoma, the laws of Congress, and the treaties of the United States, and construe them together, in order to determine whether he may lawfully engage in sporting activities.

*Powers,* 419 P.2d at 279. Even lawyers would have difficulty in stating what is "lawfully required" without careful legal research. With such guessing imposed upon an interrogatee, the interrogatee can scarcely be said to have a "free and rational choice whether to speak with the police officer" in a noncustodial interrogation. *State v. Gregory,* 79 Wn.2d 637, 640, 488 P.2d 757 (1971). Nor can it be said that the ordinance gives the interrogatee "fair warning" that the answer asked is one the police officer may require. *See* Harlan, J., in *Mills v. Alabama,* 384 U.S. 214, 223, 16 L. Ed. 2d 484, 86 S. Ct. 1434 (1966).

■ In the instant case, under a more specific ordinance concerning what is required, the hazardous guessing would have been eliminated. Furthermore, we may even assume that the ordinance may be enforced in good faith and with some measure of restraint. However, defendant is charged under the ordinance as presently drawn. The fact that the answers required of defendant would have been proper under a more clearly and specifically drawn ordinance, so that a prosecutor would not prosecute unjustly, does not render the conviction valid when the ordinance, to the extent here pertinent, under which the defendant was charged, is void for uncertainty. *See Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967); *State v. Abellano,* 50 Hawaii 384, 441 P.2d 333 (1960); *see generally,* C. Antieau, Modern Constitutional Law § 5:1 (1969, Supp. 1970). As stated in *Seattle v. Drew, supra* at 409:

> Further, the city contends that good intentions and self-restraint of law enforcement officers will not result in unjust prosecution. This assurance, however, does not save the ordinance because "well-intentioned prosecutors . . . do not neutralize the vice of a vague law." *Baggett v. Bullitt,* 377 U.S. 360, 373, 12 L. Ed. 2d 377, 84 Sup. Ct. 1316 (1964). The law should be so drawn as to

make it inapplicable to cases which obviously are not intended to be included within its terms.

We do not determine by what we hold in the instant case that the use of the phrase "lawfully required" in other contexts and more limited subject matter would necessarily be violative of the Fourteenth Amendment.

The invalidation of the portion of the ordinance here involved does not derogate from the citizen's duty to "communicate knowledge of crimes to officers charged with law enforcement." *See State v. Malone,* 69 Wn.2d 872, 873, 420 P.2d 676 (1966). As stated in *Miranda v. Arizona,* 384 U.S. 436, 477, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966):

> General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.

Furthermore, RCW 9.69, entitled "Obstructing Justice," containing RCW 9.69.030-.050, as well as the portions of the Mountlake Terrace ordinance not set out in italics, are available for use where appropriate. What we hold, however, is that, if a criminal sanction is to be imposed, the Fourteenth Amendment as construed both by federal and state courts requires much more certainty and specificity than is presently provided. Such certainty is essential both to inform the public officer of the scope of his powers and to inform the citizen of what is expected of him. *See, e.g., Palmer v. Euclid,* 402 U.S. 544, 29 L. Ed. 2d 98, 91 S. Ct. 1563 (1971).

In view of the conclusion reached, it is unnecessary to consider whether the ordinance is also void on the additional grounds claimed.

The judgment is reversed with directions to dismiss the charge.

UTTER and WILLIAMS, JJ., concur.