[No. 53390-3. En Banc. November 5, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. REVA B. AVER, ET AL, *Petitioners.*

*Morse & Bratt,* by *William D. Robison,* for petitioners.

*Meredith L. Bliss,* pro se.

*Arthur D. Curtis, Prosecuting Attorney,* and *Thomas C. Duffy, Deputy,* for respondent.

GOODLOE, J.—Defendants (petitioners) raise various challenges to their convictions under RCW 81.48.020, which makes it illegal to willfully obstruct or delay a lawfully operated train. Defendants' main challenge is that the term "lawfully operated" renders RCW 81.48.020 unconstitutionally vague. We uphold the statute and affirm their convictions.

The facts are not disputed. In Clark County District Court a jury convicted defendants of obstructing or delaying a train in violation of RCW 81.48.020. The train which defendants were convicted of obstructing is often referred to as a "White Train" or "Death Train" and is believed to have been carrying nuclear warheads to the naval submarine base at Bangor, Washington. The arrests occurred as the train attempted to pass through Vancouver, Washington. Approximately 200 to 250 people were protesting the train's passage. A number of the protesters impeded the train's passage by getting onto the train tracks. None of the defendants had permission to be on the Burlington Northern tracks. After three warnings, the Vancouver City Police removed and arrested any person who refused to move off of the tracks.

The Clark County Superior Court affirmed the defendants' convictions. The court held that RCW 81.48.020 is not unconstitutionally vague because the statute provides sufficient minimal guidelines such that law enforcement personnel or other persons of reasonable understanding could determine what is proscribed. The Court of Appeals accepted discretionary review pursuant to RAP 2.3(d). Thereafter, the matter was certified to this court pursuant

to RCW 2.06.030. Some of the defendants are represented by counsel; others represent themselves.

I

We address whether RCW 81.48.020 is void for vagueness. RCW 81.48.020 provides:

Every person who shall wilfully obstruct, hinder or delay the passage of any car *lawfully operated* upon any railway, shall be guilty of a misdemeanor.

(Italics ours.)

Defendants argue that the unconstitutionality of RCW 81.48.020 arises from the patent ambiguity of the term "lawfully operated". The challenged term is not defined by statute or court interpretation. Thus, defendants contend that a criminal conviction under the statute necessarily involves an arbitrary or *ad hoc* determination of the prohibited conduct. Defendants reason that because the definition of an element of the crime must be supplied by guesswork, the statute is clearly void. Pro se defendant further submits that the trial court improperly excised the words "lawfully operated" from the statute. The court ruled that the statute was not vague because it clearly prohibited "obstructing, hindering or delaying of a railway car." Clerk's Papers, at 37.

To assist in determining whether a statute is void for vagueness, the following rules of statutory construction are relevant. "A statute is void for vagueness under the Fourteenth Amendment if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Myrick v. Board of Pierce Cy. Comm'rs*, 102 Wn.2d 698, 707, 677 P.2d 140, 687 P.2d 1152 (1984); *see also Papachristou v. Jacksonville*, 405 U.S. 156, 162, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). "[I]f men of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement, it is not wanting in certainty." *State v. Maciolek*, 101 Wn.2d 259, 265, 676 P.2d 996 (1984).

In a constitutional challenge a statute is presumed con-

stitutional unless its unconstitutionality appears beyond a reasonable doubt. *Seattle v. Shepherd,* 93 Wn.2d 861, 865, 613 P.2d 1158 (1980); *Maciolek,* at 263. In a facial challenge, as here, we look to the face of the enactment to determine whether any conviction based thereon could be upheld. *Shepherd,* at 865. A statute is not facially vague if it is susceptible to a constitutional interpretation. *State v. Miller,* 103 Wn.2d 792, 794, 698 P.2d 554 (1985). The burden of proving impermissible vagueness is on the party challenging the statute's constitutionality. *Shepherd,* at 865. Impossible standards of specificity are not required. *Hi–Starr, Inc. v. Liquor Control Bd.,* 106 Wn.2d 455, 465, 722 P.2d 808 (1986).

No Washington court has directly ruled on the constitutionality of RCW 81.48.020. However, defendants urge that our decisions in previous cases dictate that we hold the challenged statute to be unconstitutional. *See, e.g., State v. Richmond,* 102 Wn.2d 242, 683 P.2d 1093 (1984); *State v. Hilt,* 99 Wn.2d 452, 662 P.2d 52 (1983); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982); *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980); *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975); *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967).

In *Richmond,* at 244, for example, the challenged statute provided in pertinent part:

> (1) Every person who: . . .
> (b) Wilfully omits, *without lawful excuse,* to furnish necessary food, clothing, shelter, or medical attendance for his or her child or stepchild . . . shall be guilty of the crime of family desertion or nonsupport.

Citing former RCW 26.20.030(1)(b). We held this statute to be unconstitutionally vague because the "without lawful excuse" element had not been sufficiently clarified by other statute or case authority. *Richmond,* at 243. Similarly, we held in *Hilt* that Washington's bail jumping statute was unconstitutional. The scrutinized phrase in *Hilt* was "lawful excuse". We stated:

> The bail jumping statute is . . . deficient in terms of providing guidelines to the meaning of lawful excuse. The

phrase is nowhere defined and predicting its potential application would be a guess, at best. We therefore hold that the bail jumping statute is unconstitutionally vague. *Hilt,* at 455. In *White,* we struck down a statute as vague which made it "a misdemeanor to 'obstruct a public servant' by failing, 'without lawful excuse', to provide true information 'lawfully required' of an individual by a 'public servant'." *White,* at 95. Defendants argue that the infirmity in RCW 81.48.020 compares to the above invalidated statutes.

The challenged statute is distinguishable from those found vague in the aforementioned cases. In *Richmond, Hilt,* and *White* the challenged "lawful excuse" phrase was directed toward the activities of the accused. As such, the phrase did not provide fair notice of the conduct proscribed and raised the potential of arbitrary arrests and convictions. Here, in contrast, no such confusion exists. The term "lawfully operated" is directed not toward the activities of the accused. Rather, RCW 81.48.020 forbids a definite course of conduct—willfully obstructing, hindering or delaying the passage of a train. The proscribed activity being clearly stated, the defendants cannot claim constitutional confusion as to the lawfulness of the operation of the train. We will not strain to inject doubt into the meaning of a statute. Our plain reading of RCW 81.48.020 fails to impress us of its vagueness.

Our decision here comports with our recent decision in *State v. Miller,* 103 Wn.2d 792, 698 P.2d 554 (1985). In *Miller,* we upheld a statute which provided that: "it is a class C felony to assault with intent to resist a lawful arrest or detention." *Miller,* at 793–94. We held this language provided adequate notice. *Miller,* at 794. RCW 81.48.020 is no less clear to persons of reasonable understanding than the statute found in *Miller.*

We find that RCW 81.48.020 is not unconstitutionally vague. The statute does not require one to guess at its meaning. It is sufficiently clear to prevent arbitrary or *ad hoc* determinations of criminality and establishes minimum

guidelines to govern law enforcement. *See Richmond,* at 244.

## II

■ We now turn to defendants' remaining contentions. Defendants argue that the giving of instruction 5 constituted prejudicial error. Instruction 5 provided:

"Lawfully" means with the permission of and under the authority of the railroad company.

Clerk's Papers, at 74. "Jury instructions are sufficient if they '(1) permit each party to argue his theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law.'" *Tiderman v. Fleetwood Homes,* 102 Wn.2d 334, 337–38, 684 P.2d 1302, 45 A.L.R.4th 743 (1984).

Defendants argue that instruction 5 is not a correct statement of the law. Defendants assert that the trial court's definition was without reason or authority and ignored the obvious meaning of the term "lawfully operated". Therefore, it is argued that the giving of instruction 5 was manifestly unreasonable and constituted an abuse of discretion. *See Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 684 P.2d 692 (1984). Defendants argue that a reasonable person would expect that a "lawfully operated" train at least does not violate statutory law. *See Mountlake Terrace v. Stone,* 6 Wn. App. 161, 492 P.2d 226 (1971). Defendants conclude that the instruction given by the trial court denied them the opportunity to argue that the train was not operated in accordance with local, state, and federal law.

We find defendants' argument is without merit. First, the court in *Mountlake Terrace,* at 166, recognized that the term "lawfully required" did not mean "required only by statute". Therefore, the trial court was not necessarily required to define "lawfully" in terms of compliance with local, state, and federal law. Second, Black's Law Dictionary 1032 (4th ed. 1968), defines lawful as: "Legal; warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the

law." Given this definition, the instruction given by the trial court—that the train was operated by a company having authority to do so within the state of Washington—properly informed the jury of the applicable law. The instruction was not manifestly unreasonable nor did it constitute an abuse of discretion. Moreover, proving compliance with every local, state, and federal law would be virtually impossible. To so require would necessitate a distorted reading of the statute. Consequently, the definition of "lawfully" given by the trial court was proper.

Additionally, we note that all of the witnesses stated "no" when asked, "did you stop this train because it was violating federal, state, or local transportation laws[?]" Report of Proceedings, at 163. In response, defendants indicated that they were responding to a higher law and had stopped the train because it carried nuclear weapons. In sum, instruction 5 did not prevent defendants from arguing their theory of the case.

Defendants next argue that they were entitled to a dismissal of the charges for lack of evidence. Defendants submit that the prosecution presented no evidence whatsoever to prove the train's compliance with local, state, and federal law. Thus, defendants conclude the State failed to prove an element of the crime charged—that the train was lawfully operated. The State responds that it elicited testimony to show that the train was lawfully operated. For example, the train's engineer testified that he operated the train in accordance with the law. Furthermore, it is unchallenged that the train had authority to be on the tracks. The State concludes that, while not overwhelming, the State's evidence allows for the inference that the train was lawfully operated. We agree with the State.

Due process requires that the State bear the burden of proving each and every element of the crime beyond a reasonable doubt. *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983). The applicable standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact*

could have found the essential elements of the crime *beyond a reasonable doubt.*" (Citation omitted.) *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *accord, State v. Ollens,* 107 Wn.2d 848, 853, 733 P.2d 984 (1987). The evidence as to whether the train was "lawfully operated" is minimal. Nevertheless, some evidence on that issue was presented. We find that sufficient evidence was presented.

Finally, we address the propriety of the trial court's grant of the prosecution's motion in limine pertaining to proposed defenses based on necessity and international law. Pro se defendant argues that the trial court's refusal to allow defenses based on necessity and international law was improper. The necessity doctrine provides that an act is justified if it by necessity is taken in a reasonable belief that the harm or evil to be prevented by the act is greater than the harm caused by violating the criminal statute. *See generally State v. Diana,* 24 Wn. App. 908, 604 P.2d 1312 (1979); *State v. Niemczyk,* 31 Wn. App. 803, 644 P.2d 759 (1982). Pro se defendant argues that this case resembles *Commonwealth v. Berrigan,* 325 Pa. Super. 242, 472 A.2d 1099 (1984). The superior court in *Berrigan* reversed the defendants' convictions for trespass of a nuclear power plant and remanded for a new trial. The court reversed in part because the defendants were not allowed to introduce evidence of justification. *Berrigan,* at 258.

However, we note the pro se defendant cites to a case that has been reversed by the Pennsylvania Supreme Court. *Commonwealth v. Berrigan,* 509 Pa. 118, 501 A.2d 226 (1985). The Pennsylvania Supreme Court held that defendants' offer of proof did not meet a minimum standard which would support a justification defense and, therefore, affirmed the defendants' convictions. *Berrigan,* at 123–26. We similarly hold that a necessity defense is not supported by the record in this case. *See Berrigan,* at 124. Furthermore, we agree with the trial court that international law has no bearing on whether a train is "lawfully operated" within the meaning of RCW 81.48.020. We hold

that the trial court did not abuse its discretion in granting the motion in limine. Consequently, the trial court's rejection of defendants' proposed instructions on necessity and international law was also proper. We have considered pro se's remaining contentions and have concluded that they also are without merit.

We affirm the defendants' convictions.

DOLLIVER, DORE, CALLOW, and DURHAM, JJ., and SKIMAS, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.

UTTER, J. (dissenting)—I dissent for three reasons. First, the majority has based its analysis of the statute in question, RCW 81.48.020, on the erroneous premise that it may properly be distinguished from statutes containing very similar language this court has found void for vagueness. Secondly, the majority places a nearly insurmountable burden on defendants to prove the unconstitutionality of a statute despite abundant precedent indicating its unconstitutionality. Finally, the majority upholds a jury instruction that erroneously states that the railroad company's policies determine what is the lawful operation of a train.

VAGUENESS

This court has repeatedly held that criminal statutes that contain terms such as "lawful excuse", "unlawful purpose", or "lawful order", without a clear definition of those terms in the body of the statute or in common law are unconstitutionally vague. *State v. Richmond,* 102 Wn.2d 242, 683 P.2d 1093 (1984); *State v. Hilt,* 99 Wn.2d 452, 662 P.2d 52 (1983); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982); *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980); *Bellevue v. Miller,* 85 Wn.2d 539, 541, 536 P.2d 603 (1975). RCW 81.48.020 is similarly flawed by failing to give potential defendants notice of what is a "lawfully operated" train.

The majority attempts to distinguish these cases by alleging that in our prior decisions, the challenged language referring to "lawful" behavior "was directed toward the

activities of the accused." Majority, at 308. The majority does not discuss our decision in *Seattle v. Rice, supra,* which is directly on point. In *Rice,* the defendant was charged with criminal trespass after he remained on the premises of the Seattle Public Safety Building in an intoxicated condition after being banned "forever" from such premises by an officer of the Seattle Police Department. The ordinance under which the defendant was convicted contained the following language:

A person, who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a *lawful order* not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person.

(Italics mine.) Seattle ordinance 102843. This court found the term "lawful order" unconstitutionally vague.

The term "lawful order" in the Seattle criminal trespass ordinance is not sufficiently specific to inform persons of reasonable understanding of what conduct is proscribed. Many questions must be answered to determine if an order is a "lawful order." Who is an authorized person? Was the substance of the order lawful? Was there a valid reason for the order? How long is the order to be in effect? The foregoing is but a sample of what must be considered and certainly there are many more questions which could be raised. A person receiving an order must thereupon be able to answer all such questions to know if he has received a "lawful order."

*Rice,* at 731–32.

The instant case is indistinguishable from *Rice.* RCW 81.48.020 does not define the phrase "lawfully operated"; as with the defendant in *Rice,* the defendants here were required to guess whether the actions of *third parties* were lawful to determine the legality of their own acts.

It does not make sense to treat statutes that require defendants to guess at the lawfulness of the actions of others any differently from statutes requiring them to guess at their own lawfulness. If anything, however, it is more difficult for potential defendants to determine if others are act-

ing in a lawful manner. *See Mountlake Terrace v. Stone,* 6 Wn. App. 161, 167–69, 492 P.2d 226 (1971).

The majority states: "The proscribed activity being clearly stated, the defendants cannot claim constitutional confusion as to the lawfulness of the operation of the train." Majority, at 308. This suggests that because the statute clearly proscribes obstruction, hindrance or delay, it is not necessary to define the object of such obstruction. The logic of this argument is not clear. The object of the activity: lawfully operated trains, is as crucial to this statute as, for example, a victim in a statutory rape statute. The majority would not suggest that a statutory rape statute that defined the victim as "someone who might be too young" would be constitutional simply because the proscribed activity of the perpetrator is clearly defined.

The majority makes the same error as the trial court in excising the controversial language from its summary of the statute: "RCW 81.48.020 forbids a definite course of conduct—willfully obstructing, hindering or delaying the passage of a train." Majority, at 308. The summary should include the words "a *lawfully operated* train." This court is required, when possible, to give effect to every word and clause in a statute, and no part should be deemed inoperative or superfluous unless the result of obvious mistake or error. *Cox v. Helenius,* 103 Wn.2d 383, 387–88, 693 P.2d 683 (1985). An element of RCW 81.48.020 is that the obstructed train car must be "lawfully operated". The majority violates defendants' due process rights when it reads this element out of the statute. *See Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

There are many ways the law could be written that would not be vague. For instance, the law would be constitutional if it did not contain the phrase "lawfully operated." A good faith belief that the train is operated illegally or poses a threat to public safety could be an affirmative defense. As written, however, the constitutional deficiencies of the law cannot be cured.

BURDEN OF PROOF

My second reason for dissent is that the majority opinion does not adequately address an important issue in the case that was properly preserved and presented by the petitioners. The majority gives short shrift to the issue of the placement of the burden of proof of the constitutionality of a statute in cases where like language in other statutes has already been ruled inherently vague by this court. Our failure to address this issue leaves our state law uncertain on the question, and the court properly should address it.

The majority opinion restates this court's formulation of the heavy burden of proof imposed upon a litigant posing a challenge to the constitutionality of a duly enacted statute. In so doing, it implicitly rejects—without actually addressing—respondent's argument that, in a flagrantly unconstitutional statute containing language ruled inherently vague in other statutes by this court, the presumption of constitutionality must be modified. The issue has not been clearly resolved by this court before, and the Court of Appeals accepted discretionary review under RAP 2.3(d) partly in order to address this question.

As stated by the Court of Appeals in its order granting discretionary review, "this is a case of considerable public interest in view of the political nature of petitioners' protest against the train's cargo." The question presented is one of great public import to citizens exercising their constitutional rights of free political expression.

A litigant posing a challenge to the constitutionality of a duly enacted statute faces a heavy burden. The presumption of constitutionality in such cases is a strong one. *Silver Shores Mobile Home Park, Inc. v. Everett,* 87 Wn.2d 618, 625, 555 P.2d 993 (1976); *State v. Primeau,* 70 Wn.2d 109, 422 P.2d 302 (1966). Petitioners persuasively argue, however, that a statute which is flagrantly unconstitutional is not entitled to this presumption of constitutionality, citing this court's decision in *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982). Petitioners reason the presumption should not operate in cases where the statute under chal-

lenge is couched in the same or very similar terms to others previously overturned by the court.

The "beyond a reasonable doubt" standard of persuasion of a statute's unconstitutionality cited with approval by the majority is particularly inappropriate to this case.

It reflects an excessive level of deference to the legislative and executive branches, almost to the point of placing their actions above the constitution.

Another problem with the beyond a reasonable doubt standard is that it was originally applied to facts, not law. It was designed to prevent innocent people from being convicted of serious crimes. When applied to legal questions of constitutional validity, however, this rigorous standard has no such noble goal. Rather, it serves to undercut the fundamental rights of Washington citizens . . .

(Footnotes omitted.) Utter, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights,* 7 U. Puget Sound L. Rev. 491, 508 (1984).

In *State v. White, supra,* this court held under article 1, section 7 of the Washington State Constitution that an arrest based on a subsequently invalidated statute was itself invalid, and that evidence gathered incident to that arrest must be suppressed. In so doing, we distinguished the holding of the United States Supreme Court in *Michigan v. DeFillippo,* 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979), noting that ordinances "almost identical" to the one challenged by White had been held unconstitutionally vague in our prior opinions. *White,* at 102. Accordingly, we concluded that the statute under challenge was flagrantly unconstitutional and within an exception shaped by the Court in *DeFillippo* in its statement:

> The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality— *with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.*

*White,* at 103, citing *DeFillippo,* at 38. We went on to hold:

> Where substantially the same language in a different statute has been adjudicated unconstitutional by a court of this state, a statute that has not been previously construed may nevertheless be "so grossly and flagrantly unconstitutional" by virtue of a prior dispositive judicial holding that it may not serve as the basis of a valid arrest.

*White*, at 103. In other words, a person of reasonable prudence would be bound to see the flaws in such a statute.

Our reasoning was largely premised on the need not only to deter the police from enforcing statutory law even when it mandates unconstitutional conduct, but, as Judge Browning wrote, "*the public interest is served by deterring legislators from enacting such statutes.*" *White*, at 107, citing *Powell v. Stone*, 507 F.2d 93, 98 (9th Cir. 1974), *rev'd on other grounds*, 428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976). As discussed above, the rulings of this court have consistently overturned statutes couched in terms such as those used in RCW 81.48.020, where no statutory or common law definition of the otherwise vague statutory terms exists. When a statute is couched in terms very similar to others previously overturned for the inherent vagueness by this court, the presumption of validity is utterly inappropriate. This court's reasoning in *White* compels this conclusion:

> The exact language of the statute in question need not be invalidated on a case–by–case basis. If such an approach were required, legislative bodies would be encouraged to pass other such constitutionally infirm measures, knowing that the police would get "one free bite" at the expense of an individual's constitutionally protected rights. This type of "legislative legerdemain [is] not to be countenanced."

*White*, at 103–04. The statute at bar is so similar to other statutes previously declared unconstitutional as to be "flagrantly" unconstitutional, and is not entitled to a presumption of validity.

In any event, this court should abandon the use of the phrase "beyond a reasonable doubt" altogether in the con-

text of determining the constitutionality of statutes. While we attempt to find statutes constitutional to uphold the intent of the Legislature where possible, this should not be done at the expense of defendants using a standard applicable to prosecutors' burden of proving elements of crimes.

INSTRUCTION 5

The majority approves a definition of criminal behavior that leaves prosecution of the protesters in the instant case and others in the future to the discretion of private industry. Moreover, the majority's approval of instruction 5 to the jury sanctions reading an element out of a criminal statute so as to leave defendants without the possibility of arguing their case to the jury. Instruction 5 provided that, within the context of RCW 81.48.020:

"Lawfully" means with the permission of and under the authority of the railroad company.

Clerk's Papers, at 74. The effect of this instruction is to inform the jury that any train the railroad company permits on the tracks is lawfully operated. The lawful authority for operation of trains in this state is derived from compliance with the applicable governmental laws and regulations, rather than the policies of commercial entities. Under instruction 5, if the railroad company were to operate trains in a blatantly dangerous manner in violation of every duly promulgated statute or regulation, it would still be "lawfully operated". The instruction clearly misstates the law.

The majority's reading of instruction 5 does more than present the plain meaning of the jury instruction or even interpret it in conformance with the usual rules of construction. The majority maintains the instruction connoted "that the train was operated by a company having authority to do so within the state of Washington . . ." Majority, at 310. If the instruction had done so in fact, we would be presented with a different case. The majority has reached out to save an incorrect and inadequate statement of law by adding to it the very language that would have given the

jury a correct statement of the law, and given defendants their right to argue their theory of the case.

The effect of the erroneous jury instruction was devastating to defendants. Their theory of the case hinged on the unlawfulness of the operation of the train. The prosecutor barely attempted to show the train was lawfully operated. The State's only "evidence" on the subject was an assertion by the train's engineer. That assertion had no foundation whatsoever, and the engineer admittedly had no knowledge as to whether the train complied with regulations regarding hazardous cargoes. Report of Proceedings, at 44, 47. It is manifestly unfair to allow this scintilla of evidence to support the conviction against defendants when they were given no opportunity to argue the train was not lawfully operated. *See Tiderman v. Fleetwood Homes,* 102 Wn.2d 334, 337–38, 684 P.2d 1302, 45 A.L.R.4th 743 (1984).

The majority misstates the testimony when it quotes the prosecutor's argument to the court allegedly paraphrasing the defendants' testimony they did not stop the train because it was violating federal, state, or local transportation laws. Majority, at 310. In fact, there is no such testimony in the record, and the defendants made it abundantly clear that they believed the "white train" to be in violation of state, federal, and constitutional law, as well as international treaties. *E.g.,* Report of Proceedings, at 158–74. After lengthy argument on jury instructions that would have placed the train's operation in compliance with at least some of those laws before the jury, the court abruptly decided to give the State's proposed instruction 5, deleting reference to any law or rule other than the railroad company's own policies. Report of Proceedings, at 174–75.

The effect of instruction 5 was to require a presumption that if the railroad operated a train in accordance with its own procedures, the operation was lawful. Presumptions as to any element of a crime violate due process rights guaranteed by the fourteenth amendment to the United States Constitution. *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

Because RCW 81.48.020 is facially vague, I would dismiss the convictions. Even if the statute is upheld, the jury instructions did not allow the defendants to argue their theory of the case, entitling them to a remand.

BRACHTENBACH, J., concurs with UTTER, J.