# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76242-7-I consolidated with |
| | ) | No. 76243-5 |
| Respondent, | ) | No. 76244-3 |
| | ) | No. 76245-1 |
| v. | ) | |
| | ) | |
| ABIGAIL C. BROCKWAY, MICHAEL E. | ) | DIVISION ONE |
| LAPOINTE, PATRICK A. MAZZA, and | ) | |
| JACKIE W. MINCHEW, · | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellants. | ) | FILED: May 29, 2018 |
| | ) | |

2018 MAY 29 AM 9: 49
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

MANN, A.C.J. — Abigail Brockway, Michael LaPointe, Jackie Minchew, and Patrick Mazza appeal their misdemeanor convictions for second degree trespass after they entered a railroad yard to protest coal and oil trains and raise awareness of climate change. The defendants argue on appeal that the trial court erred in failing to instruct the jury on their claim for a necessity defense and that the court violated their constitutional rights to present a defense. Because the trial court did not abuse its discretion in refusing to provide the requested instruction and did not violate the defendants' rights to present a defense, we affirm.

## FACTS

### The Trespass

Early on September 2, 2014, Brockway, LaPointe, Minchew, Mazza, and Elizabeth Spoerri entered Burlington Northern Santa Fe's Delta Yard, a railroad yard in Everett, without permission. Inside, they erected a large metal tripod over a grade crossing and chained themselves to it. Brockway sat at the top of the tripod, twenty feet off the ground, and the other four sat on the ground in chairs chained to the tripod's legs. They blocked the tracks to protest the coal and oil trains and raise awareness for railroad workers' safety and climate change. They were peaceful and civil. Eventually, the tripod was dismantled and they were arrested.

The State charged the five defendants with one count of obstructing or delaying a train in violation of RCW 81.48.020 and one count of second degree trespass in violation of RCW 9A.52.080, both misdemeanor offenses. The cases were consolidated for trial in Snohomish County District Court.

Before trial, the defendants requested the trial court instruct the jury on the affirmative defense of necessity and for leave to call experts in support of the affirmative defense. The defendant's motion recognized the burden for asserting a necessity defense as recognized in Washington Pattern Jury Instruction (WPIC) 18.02:

> Necessity is a defense to a charge of (fill in crime) if
>
> (1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm; and

(2) harm sought to be avoided was greater than the harm resulting from a violation of the law; and the

(3) the threatened harm was not brought about by the defendant; and

(4) no reasonable legal alternative existed.

The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty [as to this charge].

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.02, at 292 (4th ed. 2016) (WPIC).

In a lengthy written decision, the trial court denied the defendants' motion concluding that the necessity defense was not available as a matter of law. The next day, however, the trial court reconsidered its decision and allowed the defendants to put on expert testimony in support of the necessity defense.

*Trial Testimony Supporting a Necessity Defense*

The defendants offered evidence at trial supporting the defense. Mazza testified first. He testified that he had worked on finding solutions to climate change since 1998. He has written books and articles, worked on legislative campaigns and bills to reduce carbon in the atmosphere, and created programs for the adoption of alternative fuels. Despite his efforts, he believed that the political response to climate change was inadequate. In his opinion, the only way forward was to use civil disobedience to "start reviving our democracy" to create "a political response equal to the challenge of climate change." His goal was to

inspire citizens to "walk into their [C]ongressman's office and say, 'We are going to stay here until we hear from—we want to talk to you, Congressman, to find out what are you going to do about this.'" He admitted that legal protests were also effective.

Minchew testified that he had met with Congresswomen and Congressmen about climate change, but was disappointed by their responses. He had run for elected office to advance his climate-centric positions, but was unsuccessful. He believed that his trespass was "absolutely" necessary.

LaPointe testified that he had been politically active since he was 18 years old; he had organized factory workers, supported unions, and participated in demonstrations for years. To fight climate change, he demonstrated, wrote letters, contacted elected officials, attended political meetings, and spoke with other citizens. He was currently running for political office on a climate-centric campaign and believed that he could combat climate change if he was elected. He also testified that the coffeehouse he owned served as a gathering space for people to discuss issues, and organize themselves to combat climate change. LaPointe "felt very convinced that [trespassing] was necessary."

Spoerri described her history of activism with climate change. After growing concerned that too few people knew about climate change, she decided to engage in civil disobedience in order to "let people know that this state is on the brink of becoming a carbon corridor."

Brockway testified that she had written letters to her elected representatives, testified before the Department of Ecology, and collected

-4-

signatures on petitions for various climate-action movements. She testified that even while she was at the top of the tripod in the Delta Yard she was "petitioning the government. . . . for a moratorium on fossil fuel projects." Her goal in trespassing was "to have a fossil fuel moratorium—to have [Governor Inslee] reject all new fossil fuel structured projects" and to protest oil and coal trains. While she believed trespassing was necessary, she also planned to continue attending public hearings and writing letters supporting her positions.

Erik De Place, the policy director at the Sightline Institute, a research center based in Seattle, testified about the dangers of transporting fossil fuels by rail. He also testified that the "traditional means in raising awareness about this issue" were "not very effective" and that the government's response was "woefully lacking." DePlace admitted, however, that he had no scientific or statistical evidence that illegal protests are more effective at getting the word out about climate change than legal protests.

Dr. Richard Gammon, a retired professor of chemistry and oceanography from the University of Washington, also testified. Dr. Gammon explained how fossil fuel emissions affect the climate. In his view, international climate agreements and action at the federal, state, and local levels are needed to address climate change. He also gave examples of what people can do to raise awareness about climate change: institute a carbon tax, make homes energy efficient, buy carbon offsets, drive and fly less, and inform other people. He admitted that he had "no scientific data" about whether illegal protests are more effective than legal ones in combating climate change.

Dr. Frank James, a physician and a health officer for San Juan County, testified about the dangers oil trains pose to public health. He cited a scientific study that showed illegal action was more effective than legal action in changing policy.

*District Court's Ruling*

At the conclusion of testimony, the defendants asked that the trial court instruct the jury on the affirmative defense of necessity based on WPIC 18.02. The trial court found that the defendants had demonstrated the first three elements of the necessity defense: (1) that they reasonably believed their actions were necessary to avoid or minimize a harm, (2) that the harm they sought to avoid was greater than the harm resulting from their trespass, and (3) that the threatened harm was not brought on by the defendants; indeed, the trial court noted that the "defendants have been far from the problem and more about the solution to the problems facing the planet." The trial court decided not to give the requested instruction, however, because the defendants had failed to establish the fourth element—that there was no reasonable legal alternative to their actions:

> The evidence presented from the defendants fails to establish that there was no reasonable legal alternative to their acts of September 2 and no objective reasonable trier of fact could find that no reasonable legal alternative existed.

> Therefore the court finds that WPIC 18.02 will not be given to the jury. The necessity defense is not available to the defendants in this case.

No. 76242-7-I/7

The jury acquitted all of the defendants of obstructing a train, but it found them all guilty of trespass.

Brockway, LaPointe, Mazza, and Minchew appealed the district court's ruling to the superior court. The superior court affirmed the ruling. It ruled that:

> 1. The trial court, in its role as evidentiary gatekeeper, did not abuse its discretion in declining to instruct the jury on the necessity defense via the defendants' proposed jury instruction WPIC 18.02.
>
> 2. This court agrees with the defendants' position that there is no statutory or legal bar in presenting such a defense to a criminal trespass charge.
>
> 3. However, the trial court was correct in evaluating the totality of the evidence, including the volume of expert testimony, and concluding that there was insufficient evidence of the fourth prong of WPIC 18.02 to allow the jury to consider the defense. The fourth prong of WPIC 18.02 requires a defendant to prove by a preponderance of the evidence that "no reasonable legal alternative existed."

Brockway, LaPointe, Mazza, and Minchew (collectively Brockway) moved for discretionary review, which we granted.[1]

ANALYSIS

*Necessity Defense*

Brockway, LaPointe, Mazza, and Minchew argue first that the trial court erred by refusing to instruct the jury on the affirmative defense of necessity. We disagree.

Each side in a case is entitled to instructions that support its theory of the case, but only if evidence supports the theory. State v. Benn, 120 Wn.2d 631,

---

[1] See Ruling on Discretionary Review of April 11, 2017.

654, 845 P.2d 289. A trial court's refusal to give a jury instruction, if based on a factual determination, is reviewed for abuse of discretion. State v. Read, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). A court abuses its discretion when its decision is based on untenable grounds or for untenable reasons. The appellant bears the burden to demonstrate the trial court abused its discretion. State v. Williams, 137 Wn. App. 736, 743, 154 P.3d 322 (2007).

Washington recognizes the common law defense of necessity. A necessity defense is "available when circumstances cause the accused to take unlawful action in order to avoid a greater injury." State v. Jeffrey, 77 Wn. App. 222, 224, 889 P.2d 956 (1995). The necessity defense is not available, however, where "the compelling circumstances have been brought about by the accused or where a legal alternative is available to the accused." State v. Diana, 24 Wn. App. 908, 912-13, 604 P.2d 1312 (1979).

To establish the necessity defense, "the defendant must prove by a preponderance of the evidence that (1) he or she reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) the harm sought to be avoided was greater than the harm resulting from a violation of the law, and (3) no legal alternative existed." State v. Gallegos, 73 Wn. App. 644, 651, 871 P.2d 621 (1994) (citing Diana, 24 Wn. App. at 916). The final element at issue in this appeal is whether a legal alternative existed.

1.    Availability of Defense in Civil Disobedience Actions

As a preliminary matter, the State argues that under State v. Aver, 109 Wn.2d 303, 745 P.2d 479 (1987), the necessity defense is not available to a

-8-

defendant engaged in civil disobedience, including attempts to block a train in protest, as a matter of law. We disagree.

In Aver, our Supreme Court held that RCW 81.48.020, a statute prohibiting a person from willfully obstructing a train "lawfully operated," was not unconstitutionally vague and that the trial court did not abuse its discretion by refusing to give the necessity defense. 109 Wn.2d at 308. In Aver, the defendants obstructed a train that they believed was carrying nuclear warheads to a naval submarine base. 109 Wn.2d at 305. On appeal, they argued that RCW 81.48.020 was unconstitutionally vague. They also argued that the trial court abused its discretion by refusing to give the necessity defense. Aver, 109 Wn.2d at 311-12. The Supreme Court upheld RCW 81.48.020 and found that the "necessity defense [was] not supported by the record in this case." Aver, 109 Wn.2d at 311.

Aver does not support the State's position. It does not stand for the proposition that a defendant cannot request the necessity defense when blocking a train or that, as a matter of law, the necessity defense is unavailable to defendants who were engaged in civil disobedience. Aver, 109 Wn.2d at 311-12. The defense may be available where the evidence supports all necessary elements.

2.    Sufficiency of Evidence to Support Instruction

In this case, however, we agree with the trial court that the defendants failed to demonstrate the final element of the necessity defense—that no reasonable legal alternatives existed. The defendants' own testimony

-9-

acknowledged multiple legal alternatives available to support their efforts to draw attention to the global climate change and the impacts of rail shipping of fossil fuels.[2] Indeed, defendant's counsel conceded during argument that "one can go ad infinitum on reasonable alternatives." The testimony offered by defendants recognized that there is a legal alternative to the illegal action: using the democratic process to effect change. Because the defendants failed to offer sufficient evidence of no reasonable legal alternative, the trial court did not abuse its discretion in refusing to provide the instruction. State v. Werner, 170 Wn.2d 333, 336-37 241 P.3d 410 (2010).

The defendants argue that the trial court adopted an unduly limited construction of the phrase "reasonable legal alternative" and that "reasonable" must mean more than available, but actually effective. The defendants argue that State v. Parker's interpretation of the phrase "no reasonable alternative" supports their position. 127 Wn. App. 352, 355, 110 P.3d 1152 (2005). In Parker, Division Two of this court affirmed the trial court's refusal to give the necessity defense in a trial for the unlawful possession of a firearm where the defendant failed "to show 'that he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternative.'" Parker, 127 Wn. App. at 355 (quoting U.S. v. Harper, 802 F.2d 115, 118 (1986)).

---

[2] See, e.g., Clerk's Papers (CP) at 555-56 (Brockway testifying that her goal in trespassing was to have Governor Inslee impose a fossil fuel moratorium and reject all new fossil fuel projects).

Even if this statement from Parker is correct, it does not support the defendants' argument. Here, like Parker, while the defendants were frustrated with the political response to climate change, they all believed that the ultimate solution was political and were intent on continuing political activities. Here, after listening to the testimony, the trial court found that "[t]he evidence presented from the defendants fails to establish that there was no reasonable legal alternative to their acts of September 2 and no objective reasonable trier of fact could find that no reasonable legal alternative existed."

In conclusion, we hold that while the necessity defense may be available in actions involving civil disobedience, because the defendants here failed to demonstrate that there were no reasonable legal means available other than an illegal trespass, the court did not abuse its discretion by refusing to instruct the jury on the affirmative defense of necessity.

### Right to Present a Defense

The defendants next argue that their right to present a defense was violated because the trial judge allowed the defendants to present evidence of the necessity defense but then refused to instruct the jury on the defense. We disagree.

The right to a fair trial includes the right to present a defense. The Sixth and Fourteenth Amendments of the United States Constitution, and article I, section 21 of the Washington Constitution, guarantee the right to trial by jury and to defend against the State's allegations. These guarantees provide criminal defendants a meaningful opportunity to present a complete defense, a

-11-

No. 76242-7-I/12

fundamental element of due process. <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); <u>State v. Burri</u>, 87 Wn.2d 175, 181, 550 P.2d 507 (1976). "We review a claim of a denial of Sixth Amendment rights de novo." <u>State v. Jones</u>, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

The trial court did not deny Brockway her right to present a defense. A defendant is only entitled to an instruction on the defendant's theory of the case if there is evidence to support that theory. <u>Werner</u>, 170 Wn.2d at 336-37. Although the defendants presented evidence supporting the first three elements of the necessity defense, they failed to present sufficient evidence to demonstrate that there was no reasonable legal alternative to accomplish their goal. Where an affirmative defense, including necessity, consists of several elements and the testimony supporting one element of the defense is lacking, there is no right to present the defense. <u>U.S. v. Bailey</u>, 444 U.S. 394, 415-16, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). Accordingly, refusing to give the defense did not violate Brockway's right to present a defense.

We affirm.

_Mann, A.C.J._

WE CONCUR:

_Cox, J._                    _Becker, J._

-12-