GORDON McCLOUD, J. (dissenting)
 

 ¶ 26 The state Department of Licensing Business and Professions Division (Department) charged Southwick Inc. with unprofessional conduct for violating RCW 68.50.140(4). RCW 68.50.140(4) is a criminal statute originally designed to target grave robbers
 
 [1]
 
 and it makes removal of "human remains from a place of interment, without authority of law," a felony.
 

 ¶ 27 Whether RCW 68.50.140(4) covers Southwick's conduct presents a straightforward question of statutory interpretation. The rules of statutory interpretation compel us to hold that the plain language of this statute-criminalizing removal of human remains "without authority of law," without defining the meaning of the phrase "without
 authority of law"-creates confusion in this case. The confusion centers on whether Southwick's decision move those cremains to comply with a lawful demand by the city of Olympia (City) to vacate the City's easement-an easement necessary to protect public health
 
 [2]
 
 -should be characterized as moving cremains "with" or "without authority of law." Since
 the statutory language and context do not answer that question, we must turn to legislative history and the rule of lenity. Both interpretive aids compel the same conclusion: RCW 68.50.140(4) cannot be used to make a felony out of Southwick's decision to move cremains a few feet to a new urn garden to let the City access its lawful easement.
 

 ¶ 28 I therefore disagree with the majority's decision to uphold the finding that Southwick violated this criminal statute. I respectfully dissent.
 

 STANDARD OF REVIEW
 

 ¶ 29 The Department alleged that Southwick committed unprofessional conduct by violating RCW 68.50.140(4). Thus, as the majority acknowledges, the key question in this case is how to interpret that criminal statute. Majority at 694.
 

 ¶ 30 This is a question of statutory interpretation that we review de novo.
 
 State v. Conover,
 

 183 Wash.2d 706
 
 , 711,
 
 355 P.3d 1093
 
 (2015) (citing
 
 In re Post Sentencing Review of Charles,
 

 135 Wash.2d 239
 
 , 245,
 
 955 P.2d 798
 
 (1998) ). While the majority correctly asserts that we will defer to certain agency decisions in the agency's area of expertise, majority at 695, this is not such an area. The interpretation and application of criminal felony statutes falls within this court's, not the Department's, expertise.
 

 ANALYSIS
 

 I. The rules of statutory interpretation applicable to this case are plain language, context, and other "aids to interpretation," including legislative history and the rule of lenity
 

 ¶ 31 We therefore turn directly to our rules of statutory interpretation. We start with the plain language of the statute, examined in the context of the statutory scheme as a whole, because that is the "surest indication" of the
 legislature's intent.
 
 Five Corners Family Farmers v. State,
 

 173 Wash.2d 296
 
 , 305,
 
 268 P.3d 892
 
 (2011). If the language of a statute is plain on its face, then we will give effect to that plain meaning as an expression of legislative intent.
 
 Dep't of Ecology v. Campbell & Gwinn, LLC,
 

 146 Wash.2d 1
 
 , 9-10,
 
 43 P.3d 4
 
 (2002) (citing
 
 State v. J.M.,
 

 144 Wash.2d 472
 
 , 480,
 
 28 P.3d 720
 
 (2001) ).
 

 ¶ 32 But "[i]f, after examining the ordinary meaning of the statute's language and its context in the statutory scheme, more than one reasonable interpretation exists, we treat the statute as ambiguous."
 
 Conover,
 

 183 Wash.2d at 711-12
 
 ,
 
 355 P.3d 1093
 
 (citing
 
 State v. Jacobs,
 

 154 Wash.2d 596
 
 , 600-01,
 
 115 P.3d 281
 
 (2005) ). At that point, we turn to other "aids to construction."
 
 Campbell & Gwinn,
 

 146 Wash.2d at 12
 
 ,
 
 43 P.3d 4
 
 (citing
 
 Cockle v. Dep't of Labor & Indus.,
 

 142 Wash.2d 801
 
 , 808,
 
 16 P.3d 583
 
 (2001) ;
 
 Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.,
 

 125 Wash.2d 305
 
 , 312,
 
 884 P.2d 920
 
 (1994) ).
 

 ¶ 33 Sometimes that "aid" is "legislative history."
 

 Id.
 

 Sometimes that "aid" is the rule of lenity.
 
 Conover,
 

 183 Wash.2d at 712
 
 ,
 
 355 P.3d 1093
 
 (ambiguities in criminal statutes are resolved against the government and in favor of the defendant (citing
 
 Jacobs,
 

 154 Wash.2d at 601
 
 ,
 
 115 P.3d 281
 
 ) ).
 

 ¶ 34 The majority declines to apply the rule of lenity on the ground that neither party raised it. Majority at 694 n.4. This is incorrect. Southwick squarely raised and briefed the issue in its reply in the Court of Appeals. Appellant Southwick's Reply Br. at 21-23.
 

 ¶ 35 The majority also declines to apply the rule of lenity because it "would undermine the purpose of the [Washington State Funeral and Cemetery] Board's authority." Majority at 694 n.4. This is also an incorrect reason for declining to apply the rule of
 lenity. When the rule of lenity applies, it always works against the asserted authority of the government-that is the point. It is a check on government power when the basis for government's assertion of that power is questionable or ambiguous. As the Supreme Court has explained, it is a rule that in a criminal case,
 fairness requires that " 'a fair warning ... be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.' "
 
 United States v. Bass,
 

 404 U.S. 336
 
 , 348,
 
 92 S.Ct. 515
 
 ,
 
 30 L.Ed.2d 488
 
 (1971) (quoting
 
 McBoyle v. United States,
 

 283 U.S. 25
 
 , 27,
 
 51 S.Ct. 340
 
 ,
 
 75 L.Ed. 816
 
 (1931) ). The government cannot criminalize and stigmatize a person's acts unless it does so in clear and unmistakable language and with fair warning. That is not a reason to avoid the rule of lenity: that is the very reason for its existence.
 

 ¶ 36 Finally, it may be that the majority wants to avoid this regularly applied rule of statutory interpretation because we are interpreting this criminal statute in the context of a licensing decision rather than in the context of a criminal trial. But we cannot interpret a single criminal statute one way when it is used as a basis for felony conviction and another way when that same criminal statute is used as a basis for professional discipline or some other civil suit. The same statute, with the same words, must mean the same thing no matter where those words are read: in a criminal forum, a quasi-criminal forum, or a civil forum.
 

 ¶ 37 For example, the Washington State Bar Association (WSBA) often bases disciplinary charges against attorneys on allegations of criminal conduct. In those cases, the WSBA must prove each element of the crime-there are no shortcuts because the criminal statute is being applied in a civil disciplinary context.
 
 E.g.,
 

 In re Disciplinary Proceeding Against Placide,
 

 190 Wash.2d 402
 
 , 425-26,
 
 414 P.3d 1124
 
 (2018) (using elements of criminal theft as a basis for attorney discipline);
 
 see also
 

 Rozner v. City of Bellevue,
 

 116 Wash.2d 342
 
 , 345-47,
 
 804 P.2d 24
 
 (1991) (holding that in a civil forfeiture action, the State can seize property if it proves probable cause to believe the item was used or intended to be used to violate crimes listed in Title 69 RCW). As the United States Supreme Court explained in
 
 United States v. Thompson/Center Arms Co.,
 

 504 U.S. 505
 
 ,
 
 112 S.Ct. 2102
 
 ,
 
 119 L.Ed.2d 308
 
 (1992) (plurality opinion), a civil case in which an arms manufacturer sued for the refund of a tax imposed under the National Firearms Act (NFA), the NFA statute at issue could also form the basis for a criminal conviction. For that reason, it was "proper ... to apply the rule of lenity and resolve the ambiguity in Thompson/Center's favor."
 

 Id.
 

 at 518
 
 ,
 
 112 S.Ct. 2102
 
 (citing
 
 Crandon v. United States,
 

 494 U.S. 152
 
 , 168,
 
 110 S.Ct. 997
 
 ,
 
 108 L.Ed.2d 132
 
 (1990) ;
 
 Comm'r of Internal Revenue v. Acker,
 

 361 U.S. 87
 
 , 91,
 
 80 S.Ct. 144
 
 ,
 
 4 L.Ed.2d 127
 
 (1959) );
 
 id.
 
 at 519,
 
 112 S.Ct. 2102
 
 (Scalia, J., concurring in judgment) (expressly agreeing with the plurality's application of the rule of lenity).
 

 ¶ 38 Indeed, the Supreme Court has repeatedly confirmed that the "rule of lenity can apply when a statute with criminal sanctions is applied in a noncriminal context."
 
 Kasten v. Saint-Gobain Performance Plastics Corp.,
 

 563 U.S. 1
 
 , 16,
 
 131 S.Ct. 1325
 
 ,
 
 179 L.Ed.2d 379
 
 (2011) (citing
 
 Leocal v. Ashcroft,
 

 543 U.S. 1
 
 , 11 n.8,
 
 125 S.Ct. 377
 
 ,
 
 160 L.Ed.2d 271
 
 (2004) ). Consistency of law generally requires that the rule of lenity be applied regardless of "whether we encounter its application in a criminal or noncriminal context."
 
 Leocal,
 

 543 U.S. at
 
 12 n.8,
 
 125 S.Ct. 377
 
 .
 

 ¶ 39 The rule is simple: a criminal statute, like RCW 68.50.140(4), means the same thing when it is used in a criminal case or a civil case.
 

 II. Plain language and context do not provide a clear explanation of what "without authority of law" covers
 

 ¶ 40 With these rules of statutory interpretation in mind-plain language, context, and, if these rules lead to uncertainty, then other interpretive aids such as legislative history and the rule of lenity-we turn back to the criminal statute at issue here.
 

 ¶ 41 In this case, the relevant statutory provision is RCW 68.50.140(4). That subsection, in context of the entire statute, states:
 

 (1) Every person who shall remove human remains, or any part thereof, from a grave, vault, or other place where the same has been buried or deposited awaiting burial or cremation, without authority of law, with intent to sell the same, or for the purpose of securing a reward for its return, or for dissection, or from malice or wantonness, is guilty of a class C felony.
 

 (2) Every person who shall purchase or receive, except for burial or cremation, human remains or any part thereof, knowing that the same has been removed contrary to the foregoing provisions, is guilty of a class C felony.
 

 (3) Every person who shall open a grave or other place of interment, temporary or otherwise, or a building where human remains are placed, with intent to sell or remove the casket, urn, or of any part thereof, or anything attached thereto, or any vestment, or other article interred, or intended to be interred with the human remains, is guilty of a class C felony.
 

 (4) Every person who removes, disinters, or mutilates human remains from a place of interment,
 
 without authority of law,
 
 is guilty of a class C felony.
 

 RCW 68.50.140 (emphasis added). Southwick clearly "remove[d] human remains." As the majority acknowledges, the only question is whether it did so "without authority of law."
 

 ¶ 42 Neither the plain language of RCW 68.50.140(4) nor the full statute within which it resides helps us interpret that phrase in this case. "Authority of law" is not defined in that statute. In fact, it is not defined anywhere in Title 68 RCW, even though it appears in two provisions of that title: RCW 68.50.140 (making it a felony to disinter human remains "without authority of law") and 68.24.190 (making it a misdemeanor to establish a roadway through cemeteries "without authority of law").
 

 ¶ 43 The parties, of course, seize on the absence of a clear definition within the statute or the chapter to argue for their own interpretations. Southwick argues that it acted with "authority of law" when it moved the urn garden because a different statute in that title grants it police
 powers to enforce its own rules and regulations and "the ordinances of the city and county" (remember, Southwick moved the cremains to comply with the City's assertion of its property right). That statute, RCW 68.56.060, gives the cemetery
 

 the authority of a police officer for the purpose of maintaining order,
 
 enforcing the rules and regulations of the cemetery association,
 
 the laws of the state, and the ordinances of the city or county, within the cemetery over which he or she has charge, and within such radius as may be necessary to protect the cemetery property.
 

 (Emphasis added.) Southwick argues that its own rules specifically reserve to it "the right to correct errors made by it in making interments, disinterments or removals," so it had "the right to remove and reinter the remains in the property" under this police-powers statute. Appellant Southwick, Inc.'s Pet. for Review at 5-6 (quoting Admin. Record (AR) at 163). Southwick also asserts that it had "authority of law" to move the urn garden because the City demanded access to its easement for critical public health purposes-a demand premised on a lawful property right. Appellant Southwick's Opening Br. at 15 (citing AR at 163).
 

 ¶ 44 The majority disagrees. In the absence of a resident definition of "without authority of law," it argues that a different statute requires Southwick to notify the decedent's next of kin when his or her cremains are moved, so that other statute-in a different chapter-negates any "authority of law" Southwick might have had under RCW 68.56.060, even though the former statute makes no reference to the latter statute. Majority at 696, 698 (citing RCW 68.50.220 ).
 

 ¶ 45 Neither interpretation of RCW 68.50.140(4) is perfect. Southwick's interpretation does not address the existence of RCW 68.50.220 at all. The majority's interpretation ignores the fact that the Department could have charged Southwick with failing to notify next of kin in violation of RCW 68.50.220 -which is not a criminal statute and which
 cross-references RCW 68.50.200 and 68.50.210, but not RCW 68.50.140(4) -but did not. The Department charged Southwick
 with disinterring cremains "without lawful authority" in violation of RCW 68.50.140(4). To reach its result, the majority has to make the interpretive leap that a violation of RCW 68.50.220 (in one chapter of Title 68 RCW) abrogates the "authority of law" that RCW 68.56.060 (in another chapter of Title 68 RCW) gave Southwick to govern and police its cemetery, so that Southwick now acted without such authority in violation of criminal statute RCW 68.50.140(4). To repeat, neither interpretation of the undefined term "without authority of law" is perfect.
 

 ¶ 46 We might then turn to our prior case law to help interpret the phrase "without authority of law" to see if that supplies the clarity that Title 68 RCW lacks.
 
 See
 

 State v. Smith,
 

 111 Wash.2d 1
 
 , 8-11,
 
 759 P.2d 372
 
 (1988).
 

 ¶ 47 It does not. In fact, our prior case law shows that this phrase, "without authority of law," is usually considered ambiguous. In
 
 State v. Richmond,
 
 for example, this court found that the crime of willful failure to pay child support "without lawful excuse" was so vague that it rendered the entire statute "void for vagueness under [the due process protections of] U.S. Const. amend. 14."
 
 102 Wash.2d 242
 
 , 248,
 
 683 P.2d 1093
 
 (1984). The due process clause requires criminal statutes to be sufficiently specific so that (1) "persons of common understanding" have notice that the activity is unlawful and (2) criminal convictions are not based on "arbitrary or
 
 ad hoc
 
 determinations of criminality."
 
 Id.
 
 at 243-44,
 
 683 P.2d 1093
 
 . We held that the phrase "without lawful excuse" violated both protections because "potential defendants may violate the statute with the impression that their excuse [ (physical, vocational or economic incapacity, or emotional illness) ] is lawful, and only later find that it was not."
 
 Id.
 
 at 247,
 
 683 P.2d 1093
 
 . Moreover, the absence of any definition forced "[j]udges ... to decide what constitutes a lawful excuse on a case-by-case basis according to their personal predilections."
 

 Id.
 

 ¶ 48 Similarly, in
 
 State v. Hilt,
 
 this court voided a statute criminalizing bail jumping "without lawful excuse" on vagueness grounds because the phrase "without lawful excuse" was "nowhere defined and predicting its potential application would be a guess, at best."
 
 99 Wash.2d 452
 
 , 455,
 
 662 P.2d 52
 
 (1983).
 

 ¶ 49 And in
 
 State v. White,
 
 this court voided a different statute that criminalized the refusal to provide "lawfully required" information to a public servant without "lawful excuse."
 
 97 Wash.2d 92
 
 , 100,
 
 640 P.2d 1061
 
 (1982). We held that the phrase "lawfully required" was too subjective to provide fair notice because it left the determination of what information a person must provide to the "unfettered discretion of not only police officers, but virtually any public servant."
 

 Id.
 

 We also held that the phrase "lawful excuse" was ambiguous, because it left a citizen to guess whether his or her claim of privilege against answering would be considered a "lawful excuse."
 

 Id.
 

 (citing U.S. CONST . amend. V ).
 

 ¶ 50 To be sure, the inherent vagueness of the phrase "lawful authority" might be cured by language elsewhere in the statute or even in the common law. In
 
 State v. Smith,
 
 for example, we upheld a criminal harassment statute against a vagueness challenge, despite its use of the phrase "without lawful authority."
 
 111 Wash.2d at 15
 
 ,
 
 759 P.2d 372
 
 . We reasoned that where (as in that case) the criminal activity defined by the statute has a long common law history and significant statutory background to inform its meaning, that history and background can cure the inherent indefiniteness in the phrase "without lawful authority."
 
 Id.
 
 at 8-11, 15,
 
 759 P.2d 372
 
 ;
 
 accord
 

 State v. Miller,
 

 103 Wash.2d 792
 
 , 794-95,
 
 698 P.2d 554
 
 (1985) (using common law to inform the meaning of assault with intent to resist a "lawful" arrest or detention).
 

 ¶ 51 But
 
 Smith
 
 took great care to assure that
 
 Richmond, Hilt,
 
 and
 
 White
 
 remain binding precedent where there is an "absence of identifiable sources of law" that might substantiate or define what constitutes "lawful" behavior.
 

 Smith,
 

 111 Wash.2d at 8
 
 ,
 
 759 P.2d 372
 
 ;
 
 see also
 

 State v. Aver,
 

 109 Wash.2d 303
 
 , 308,
 
 745 P.2d 479
 
 (1987) (acknowledging that
 
 Richmond, Hilt,
 
 and
 
 White
 
 are still controlling precedent).
 

 ¶ 52 This is just such a case. Here, the crime charged is disinterring cremains by a
 cemetery operator pursuant to an order from a municipality without informing next of kin. Neither the majority nor the State cites to any long-standing common law history or background suggesting that such actions are unlawful. Thus, the common law fix announced in
 
 Smith
 
 and
 
 Miller
 
 is inapplicable. Instead, the general rule of
 
 Richmond, Hilt,
 
 and
 
 White
 
 -that undefined phrases like "lawful authority" or "without lawful authority" are vague and ambiguous-controls.
 

 ¶ 53 In sum, after looking to RCW 68.50.140 's plain language, statutory context, and related cases that might help interpret the critical phrase "without lawful authority," we find no definite answer. The majority's interpretation is certainly plausible despite its complications. But Southwick's interpretation is also plausible. Under
 
 Campbell & Gwinn
 

 ,
 
 the statute is ambiguous.
 
 146 Wash.2d at 12
 
 ,
 
 43 P.3d 4
 
 . That compels us to look to other "aids to construction."
 

 Id.
 

 III. Other "aids to construction" bar application of this felony statute to Southwick's conduct
 

 ¶ 54 Our case law has been inconsistent on whether the next "aid" we turn to when interpreting a criminal statute is legislative history or the rule of lenity.
 
 See
 

 Conover,
 

 183 Wash.2d at 711-12
 
 ,
 
 355 P.3d 1093
 
 (applying the rule of lenity after finding the statute ambiguous (citing
 
 Jacobs,
 

 154 Wash.2d at 600-01
 
 ,
 
 115 P.3d 281
 
 ) );
 
 State v. Evans,
 

 177 Wash.2d 186
 
 , 192-93,
 
 298 P.3d 724
 
 (2013) (using legislative history to resolve an ambiguity before applying the rule of lenity).
 

 ¶ 55 In this case, though, it does not matter; both point to the same result.
 

 ¶ 56 Regarding legislative history, the crime of disinterring the dead now codified at RCW 68.50.140 was originally
 intended to punish grave robbing. It was titled "Opening Grave-Stealing Body-Receiving Same." LAWS OF 1909, ch. 249, § 239. This history suggests that acquiescing in the City's lawful demand that Southwick vacate the City's easement so the City could assure public health was not the type of grave robbing that the legislature intended to target with this statute.
 

 ¶ 57 The rule of lenity compels the same conclusion. It is a rule that ambiguous criminal statutes must be construed strictly against the government. This also weighs in favor of interpreting the statutory phrase "without authority of law" against the government and in favor of Southwick's position that using its delegated police powers to accommodate the City's lawful demand for access to its property was not without authority of law.
 

 CONCLUSION
 

 ¶ 58 After examining the statute's plain language and context, RCW 68.50.140(4) 's phrase "without authority of law" is ambiguous as applied to Southwick's actions. We must resolve that phrase's ambiguity against the government. Southwick's actions cannot, therefore, be deemed to have been taken "without authority of law."
 

 ¶ 59 I respectfully dissent.
 

 Fairhurst, C.J.
 

 González, J.
 

 Laws of 1909, ch. 249, § 239.
 

 The relocation would allow the City unimpeded access to water pipes that supplied water to 90 percent of its residents.